242 N.J. Super. 474 (1990)
577 A.2d 524
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CARLOS VARONA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 8, 1990.
Decided July 12, 1990.
*477 Before Judges MICHELS, DEIGHAN and R.S. COHEN.
*478 Philip Stephen Fuoco argued the cause for appellant (Philip Stephen Fuoco, attorney; Robert F. Williams, on the brief).
Michael J. Williams, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General of New Jersey, attorney; Michael J. Williams, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Tried to a jury, defendant Carlos Varona was convicted of conspiracy to distribute five or more ounces of cocaine in violation of N.J.S.A. 2C:5-2 and N.J.S.A. 2C:35-5a(1) and b(1) and possession of five or more ounces of cocaine with at least 3.5 grams of free base with intent to distribute in violation of N.J.S.A. 2C:35-5a(1) and b(1). Defendant's motion for a judgment of acquittal or, alternatively, for a new trial, arrest of judgment and a dismissal were denied. The trial court merged defendant's conviction for conspiracy into his conviction for possession with intent to distribute and committed him to the custody of the Commissioner of the Department of Corrections for 20 years with a 10-year period of parole ineligibility. In addition, the trial court assessed a Drug Enforcement and Demand Reduction penalty of $3,000, a laboratory fee of $50, a Violent Crimes Compensation Board penalty of $30, and revoked defendant's driving privileges for two years. Defendant appeals.
Defendant seeks a reversal of his convictions, or, alternatively, a modification of his sentence on the following grounds set forth in his brief:
I. THE "ISSUE" OF THE INFORMER'S PRIVILEGE TAINTED THE ENTIRE TRIAL.
A. The Identity of the Informant, Including His Name and Address, Should Have Been Disclosed.
B. Defendant's Attempt to Establish a Theory of Entrapment Was Needlessly Blocked by the Court in a Mistaken Application of the Informer's Privilege.

*479 C. While Misapplying the Informer Privilege the Court Directed the Jury to Disregard Defendant's Theory of Defense.
II. DEFENDANT'S RIGHTS TO CONFRONT AND CROSS-EXAMINE THE WITNESSES AGAINST HIM WAS DENIED.
A. Pedro Villegas
B. The Informant
C. The "Co-Conspirator" Statements of Michael Rodgers Made on February 2, 1988 Were Improperly Admitted Against This Defendant.
III. DEFENDANT'S RIGHT TO COMPULSORY PROCESS WAS DENIED.
IV. 2C:35-12 VIOLATES THE NEW JERSEY CONSTITUTIONAL REQUIREMENT OF SEPARATION OF POWERS.
A. N.J.S.A. 2C:35-12, Authorizing Prosecutors to Agree with Defendants to Reduce Otherwise Mandatory Minimum Sentences, is an Unconstitutional Violation of the Separation of Powers Doctrine as Both an Unlawful Delegation of Legislative Power Over Sentencing to the Executive, and as an Authorization to the Executive to Infringe on the Judicial Sentencing Power.
B. Relief Requested.
V. DEFENDANT'S SENTENCE IS EXCESSIVE
A. The Maximum Sentence Above the Presumptive Term, and the Maximum Period of Parole Ineligibility Were Both in Violation of the Sentencing Provisions of the Code of Criminal Justice.
1. There is Inadequate Evidence in the Record to Support the Sentence Imposed.
2. The Maximum Term of Parole Ineligibility is Not Justified on This Record.
B. Defendant's Sentence is so Disparate Compared to His Co-Defendants' as to be Excessive.
C. The Prosecutor's Action in Seeking the Maximum Sentence After Offering Defendant a Fifteen Year Flat Sentence was Purely Vindictive.
We have carefully considered these contentions and all of the arguments advanced by defendant in support of them and find that they are clearly without merit. R. 2:11-3(e)(2). However, further comment with respect to some of these contentions is appropriate.

I.
We turn first to defendant's claim that the informant's identity and address should have been disclosed during trial because the informant played a substantial and significant role in the transaction. We disagree. It does not appear on this record that the informant's involvement was so substantial as *480 to warrant revelation of his identity. On the contrary, the informant's role in the transaction was limited. The informant primarily introduced undercover officer Pedro Villegas to the defendants. The informant did not negotiate, conduct or set up any of the sales, nor did he possess any drugs or money at the time of the sales. His most significant involvement came when he accompanied co-defendant Michael Rodgers to meet defendant. This does not rise to the level of participation described in State v. Roundtree, 118 N.J. Super. 22, 285 A.2d 564 (App.Div. 1971), or Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). Rather, as was the case in State v. Booker, 86 N.J. Super. 175, 206 A.2d 365 (App.Div. 1965), and State v. Milligan, 71 N.J. 373, 365 A.2d 914 (1976), the informant here was merely a witness to the criminal events which transpired. This is not grounds for disclosure of his identity and does not waive the privilege codified in N.J.S.A. 2A:84A-28 and Evid. R. 36.
Defendant also contends that the trial court's application of the privilege hindered his assertion of an entrapment defense. This is totally without merit. As the State correctly points out, "[t]he trial testimony revealed that at no time was entrapment presented as a defense. In fact, the court gave no instruction on entrapment and defendant never requested such a charge." Defendant raises entrapment as a mere afterthought. Aside from the fact that defendant failed to raise an entrapment defense, the facts established below give no indication that an entrapment defense would have been successful. Villegas testified that the informant merely introduced him to the defendants and contacted him when the February 4th shipment was ready. Aside from the few moments that the informant was alone with Rodgers and defendant, the informant was always in sight. There was no indication that the criminal conduct which occurred was the product of the creative activity of law enforcement officers.
*481 Additionally, defendant's reliance on State v. Talbot, 71 N.J. 160, 364 A.2d 9 (1976), is misplaced. In Talbot, it was held that entrapment arises as a matter of law where an informant furnishes a defendant with drugs for resale to an officer. Specifically, the Supreme Court wrote:
We hold that where an informer or other agent generally acting in concert with law enforcement authorities, furnishes a defendant with heroin for the purpose of then arranging a sale of the heroin by the defendant to an undercover officer, which sale is then consummated, defendant has been entrapped as a matter of law even though predisposition to commit the crime may appear, and notwithstanding that the furnishing of the heroin is unknown to and contrary to the instructions of the law enforcement authorities. Those authorities, having set the agent to work in enticing the defendant, the prosecution should bear the onus of the means selected by the agent. [Id. at 168, 364 A.2d 9].
As noted above, there is no basis in the evidence to conclude that the informant furnished defendant with drugs at any time, especially not for resale to Villegas.
Defendant's claim that the trial court's instruction during counsel's closing directed the jury to reject his defense is also without merit. Defendant did not defend these charges on an entrapment theory so the trial court could not have told the jury to disregard it. Secondly, the trial court's instruction had no prejudicial effect. The trial court merely explained the general rule of confidentiality and its ruling on the motion. Finally, we are satisfied that the trial court's remark that counsel's argument was "inappropriate under the circumstance[s]" was necessary to a fair trial. This instruction was prompted by counsel's assertions that the State was hiding relevant evidence. In light of the trial court's previous rulings and the fact that disclosure of the informant's identity was not required, counsel's remarks warranted judicial comment.

II.
Defendant contends that he was unable to effectively cross-examine undercover investigator Villegas and the confidential informant. We disagree. The right to cross-examine is *482 fundamental in a criminal case and is constitutionally guaranteed. See U.S. Const. amend. VI; N.J. Const. (1947) art. I, par. 10. As our Supreme Court well stated in State v. Pontery, 19 N.J. 457, 472, 117 A.2d 473 (1955):
[A]s a general rule, any fact which bears against the credibility of a witness is relevant to the issue being tried, and the party against whom the witness is called has a right to have that fact laid before the jury in order to aid them in determining what credit should be given to the person testifying. And it is proper for either the defense or the prosecution to show the interest of a witness as bearing upon the witness' credibility. Were it otherwise, the value of cross-examination in the search for truth which goes on in our courts every day would be severely curtailed and in some respects perhaps extinguished altogether.
See State v. Sugar, 100 N.J. 214, 230, 495 A.2d 90 (1985); State v. Smith, 101 N.J. Super. 10, 13, 242 A.2d 870 (App.Div. 1968), certif. den., 53 N.J. 577, 252 A.2d 154 (1969). Indeed, "[t]he right to cross-examine and test for bias at a plenary trial of criminal charges is indispensable." State v. Sugar, supra, 100 N.J. at 230, 495 A.2d 90. Because the right to cross-examine is of constitutional magnitude, "[t]here can be no question that a defendant must be afforded the opportunity ... to show bias on the part of adverse state witnesses." Id.
Despite the fundamental importance of cross-examination, "the cross-examiner [does not have] a license to roam at will under the guise of impeaching the witness." State v. Pontery, supra, 19 N.J. at 473, 117 A.2d 473. The well established rule, by "the great weight of authority ... [is that] the trial judge has broad discretion to determine the proper limits of cross-examination of a witness whose credibility is put in issue." Id. See State v. Sanchez, 224 N.J. Super. 231, 251, 540 A.2d 201 (App.Div.), certif. den., 111 N.J. 653, 546 A.2d 561 (1988); State v. Ortiz, 202 N.J. Super. 233, 244, 494 A.2d 822 (App.Div.), certif. den., 102 N.J. 300, 508 A.2d 187 (1985); State v. Smith, supra, 101 N.J. Super. at 14, 242 A.2d 870.
Review of the record establishes that defendant had ample opportunity to cross-examine Villegas and that there was no need for defendant to confront the informant. The informant's *483 role was so limited that his presence was not essential to a fair trial. While it is true that the trial court refused to allow defense counsel to ask Villegas several questions, all involved hearsay or irrelevant or protected material. In our view, the trial court's rulings were well within its discretion and involved no deprivation of defendant's constitutional rights.
We are also satisfied that the statements made by co-defendant Rodgers were properly admissible. The admission of a co-conspirator's statement is governed by Evid. R. 63(9) which provides:
A statement which would be admissible if made by the declarant at the hearing is admissible against a party if (a) when made it concerned a matter within the scope of a then existing agency, employment or representative relationship, or (b) at the time the statement was made the party and the declarant were participating in a plan to commit a crime or civil wrong and the statement was made in furtherance of that plan.
The co-conspirator exception to the hearsay rule provides that "where two or more persons are alleged to have conspired to commit a crime or a civil wrong, any statement made by one during the course of and in furtherance of the conspiracy is admissible in evidence against any other member of the conspiracy." State v. Phelps, 96 N.J. 500, 508, 476 A.2d 1199 (1984). It is well settled that the exception does not abridge a defendant's right to confront the witnesses against him. State v. Boiardo, 111 N.J. Super. 219, 230, 268 A.2d 55 (App.Div.), certif. den., 57 N.J. 130, 270 A.2d 33 (1970), cert. den., 401 U.S. 948, 91 S.Ct. 931, 28 L.Ed.2d 231 (1971). However, to be admissible, a co-conspirator statement must meet a three-part test:
First, the statement must have been made in furtherance of the conspiracy. Second, the statement must have been made during the course of the conspiracy. Lastly, our courts have held that there must be evidence, independent of the hearsay, of the existence of the conspiracy and defendant's relationship to it. [State v. Phelps, supra, 96 N.J. at 509-510, 476 A.2d 1199 (citations omitted)].
Application of these principles confirms the trial court's admission of Rodgers' statement. First, it is clear that the statement was made in furtherance of the conspiracy. Rodgers' *484 statement about his need to contact his partner had no other purpose than to facilitate the sale of cocaine to Villegas  the object of the conspiracy. Secondly, the statement was made during the conspiracy. Regardless of defendant's assertions, the February 2nd conspiracy had clearly ended when the statement was made because the original sale to Villegas had been completed. The second conspiracy began as soon as the first one ended even though the objective of the conspiracy was not fulfilled until February 4th. Finally, there was ample evidence of the conspiracy outside of the challenged statement. Defendant was there on the day in question with the kilogram of cocaine, Rodgers pointed defendant out to Villegas as the person with the drugs and defendant was prepared to make the sale. This plainly established that defendants conspired to commit the offense.
Beyond this, even assuming that the trial court erred in admitting Rodgers' statement in evidence, the error was harmless beyond a reasonable doubt. The proof of defendant's guilt was overwhelming and there was no possibility that the error led the jury to a result that it otherwise would not have reached. State v. Macon, 57 N.J. 325, 336, 273 A.2d 1 (1971). Stated simply, the error, if any, was not clearly capable of producing an unjust result. R. 2:10-2; State v. Lair, 62 N.J. 388, 392, 301 A.2d 748 (1973).

III.
Defendant also contends that his rights to compulsory process and to confront the witnesses against him were denied by the trial court's quashing of a subpoena to produce a recording device and refusal to allow him to question Villegas before the jury as to whether his conversation with defendant was recorded. The record shows that during the defense counsel's re-cross-examination of Villegas it was first revealed that Villegas wore a "body wire" on the date in question and that the backup police officers overheard his conversation with defendant. Defendant *485 moved for a mistrial and for production of any transcripts of the conversations.
The trial court properly held an Evid. R. 8 hearing out of the presence of the jury "for the limited purpose of determining what kind of wire was involved and whether or not there [was] a transcript." During the hearing, Villegas explicitly testified that no recording was made of the conversations and no notes or transcripts of any kind existed as to what was said. Villegas wore the wire so that the backup officers could make sure he was in no danger and to listen for his signal to move in. Likewise, Sergeant Burley, a member of the backup team, testified that although the instrument used was capable of making a tape, there was no tape made that day and that the wire was used for Villegas' personal protection. Upon conclusion of the testimony, it was obvious that the conversations had not been taped and that no transcript existed which could be examined. The trial court, therefore, denied defendant's request to bring the machine into court, rejected counsel's application for a mistrial and precluded cross-examination of Villegas before the jury concerning the body wire. On the following day, defense counsel subpoenaed one of the officers and requested that he bring the body wire to court. The trial court quashed the subpoena.
The compulsory process clause guarantees "the right to the Government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt." Pennsylvania v. Ritchie, 480 U.S. 39, 56, 107 S.Ct. 989, 1001, 94 L.Ed.2d 40, 56 (1987). Modern courts considering the question, especially when concerned with the production of evidence, have tended to focus away from the contours of compulsory process and to emphasize a due process approach based on the prosecution's obligation to give to the defendant evidence in its possession that is favorable to the accused and material to guilt or punishment. Id. at 56, 107 S.Ct. at 1001-1002, 94 L.Ed.2d at 56-57 (citing Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 *486 L.Ed.2d 215 (1963)). Under this analysis, evidence is material and thus subject to disclosure "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id. at 57, 107 S.Ct. at 1001-1002, 94 L.Ed.2d at 57. See also State v. Roma, 140 N.J. Super. 582, 357 A.2d 45 (Law Div. 1976). The overall "focus should be on the essential fairness of the trial. The test is whether the evidence could induce reasonable doubt as to the verdict or would tend to exculpate defendant." State v. Colasurdo, 214 N.J. Super. 185, 189, 518 A.2d 768 (App.Div. 1986); see State v. Boiardo, 83 N.J. 350, 359-360, 416 A.2d 793 (1980).
Applying these principles here, defendant's rights were not prejudiced by the trial court's quashing of the subpoena and its refusal to allow defense counsel an opportunity to view the body wire. Clearly, the wire was not "material." In other words, there is no reasonable probability that, had the wire been disclosed, the result of the proceeding would have been different. The wire had no exculpatory value, especially since it was clear that no tape or transcript of the conversation existed. Production of the wire and display to the jury would only have beclouded an already complicated trial. In short, defendant has failed to demonstrate that non-production of the wire constituted a suppression of evidence which was exculpatory or otherwise material to preparation of his case. State v. Colasurdo, supra, 214 N.J. Super. at 188-191, 518 A.2d 768. As such, his subpoena was properly quashed. Cf. State v. King, 164 N.J. Super. 330, 396 A.2d 354 (App.Div. 1978), certif. den., 81 N.J. 54, 404 A.2d 1154 (1979).
Defendant also argues that his right to confront the witnesses against him was denied by the trial court's refusal to permit him to cross-examine Villegas regarding the body wire. Again, we disagree. The trial court refused to permit defense counsel to examine Villegas concerning the body wire, reasoning *487 such questions had "no relevancy, ... no probative value [and would not] help [the] jury decide [the] case." This ruling did not impair defendant's ability to effectively cross-examine the officer. The fact that the conversations were not taped or transcribed made the body wire irrelevant. Questions concerning its uses and capabilities had no place in the trial for they would have only confused and misled the jury. Moreover, questioning Villegas on this matter was not material, probative or relevant. Consequently, defendant's Sixth Amendment rights to confrontation and compulsory process were not violated by the trial court's ruling.

IV.
Defendant also claims that N.J.S.A. 2C:35-12 is unconstitutional in that it infringes on the doctrine of separation of powers. Specifically, defendant argues that the statute unconstitutionally permits the prosecutor to alter the mandatory minimum sentences provided by the Legislature in a way that binds the sentencing judge and unconstitutionally allows the prosecutor to substitute his judgment for that of the judge.
In our view, we need not reach the merits of this issue because defendant lacks standing to challenge the constitutionality of this statute. Although it is clear that a person who is challenging a statute as violative of the New Jersey Constitution need not meet the stringent standing requirements imposed on federal plaintiffs, Home Builders League of South Jersey, Inc. v. Township of Berlin, 81 N.J. 127, 131, 405 A.2d 381 (1979), the challenger must show sufficient injury before his application will be heard. In specific terms, a plaintiff "must demonstrate either that [he has] been injured by enforcement of the statute or that the statute substantially deters [his] constitutionally protected activity.... The challenger must have suffered a `cognizable measure of harm to protectable interests.'" In re Martin, 90 N.J. 295, 308, 447 A.2d 1290 (1982). As was aptly stated by Justice Jacobs in Crescent Park *488 Tenants Ass'n v. Realty Equities Corp., 58 N.J. 98, 107-108, 275 A.2d 433 (1971):
Unlike the Federal Constitution, there is no express language in New Jersey's Constitution which confines the exercise of our judicial power to actual cases and controversies. U.S. Const. art. III, § 2; N.J. Const. art. VI, § 1. Nevertheless we will not render advisory opinions or function in the abstract (New Jersey Turnpike Authority v. Parsons, 3 N.J. 235, 240 [69 A.2d 875] (1949)) nor will we entertain proceedings by plaintiffs who are "mere intermeddlers" (Baxter v. Baxter, 43 N.J. Eq. 82, 86 [10 A. 814] (Ch. 1887), aff'd, 44 N.J. Eq. 298 [18 A. 80] (E. & A. 1888)), or are merely interlopers or strangers to the dispute (Bergen County v. Port of New York Authority et al., 32 N.J. 303, 307, 318 [160 A.2d 811] (1960)). Without ever becoming enmeshed in the federal complexities and technicalities, we have appropriately confined litigation to those situations where the litigant's concern with the subject matter evidenced a sufficient stake and real adverseness. In the overall we have given due weight to the interests of individual justice, along with the public interest, always bearing in mind that throughout our law we have been sweepingly rejecting procedural frustrations in favor of "just and expeditious determinations on the ultimate merits." See Tumarkin v. Friedman, 17 N.J. Super. 20, 21 [85 A.2d 304] (App.Div. 1951), certif. denied, 9 N.J. 287 [88 A.2d 39] (1952); Handelman v. Handelman, 17 N.J. 1, 10-11 [109 A.2d 797] (1954).
See also State v. Todd, 238 N.J. Super. 445, 460, 570 A.2d 20 (App.Div. 1990); State v. Ogar, 229 N.J. Super. 459, 470, 551 A.2d 1037 (App.Div. 1989).
Defendant did not enter a plea in connection with these criminal charges and, thus, N.J.S.A. 2C:35-12 has no bearing or application to his situation. Quite simply, defendant has suffered no injury by the enactment of N.J.S.A. 2C:35-12 and, therefore, lacks standing to challenge its constitutionality.

V.
Finally, defendant contends that the sentence imposed was manifestly excessive and violative of the sentencing provisions of the New Jersey Code of Criminal Justice. Specifically, defendant charges, among other things, that the maximum period of parole ineligibility was unsupported, and that the prosecutor acted vindictively in seeking the maximum sentence. We disagree.
*489 Defendant was found guilty of conspiracy to distribute cocaine in violation of N.J.S.A. 2C:5-2 and N.J.S.A. 2C:35-5a(1) and b(1) and possession of five ounces or more of cocaine with intent to distribute in violation of N.J.S.A. 2C:35-5a(1) and b(1). At sentencing, the trial court merged defendant's conspiracy conviction with his possession conviction and sentenced him only for violation of N.J.S.A. 2C:35-5a(1) and b(1). The relevant parts of N.J.S.A. 2C:35-5 provide:
Manufacturing, Distributing or Dispensing a. Except as authorized by P.L. 1970, c. 226 (C. 24:21-1 et seq.), it shall be unlawful for any person knowingly or purposely:
(1) To manufacture, distribute or dispense, or to possess or have under his control with intent to manufacture, distribute or dispense, a controlled dangerous substance or controlled substance analog; or
(2) To create, distribute, or possess or have under his control with intent to distribute, a counterfeit controlled dangerous substance.
b. Any person who violates subsection a. with respect to:
(1) Heroin, or its analog, or coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, or analogs, except that the substances shall not include decocainized coca leaves or extractions which do not contain cocaine or ecogine, in a quantity of five ounces or more including any adulterants or diluants is guilty of a crime of the first degree. The defendant shall, except as provided in N.J.S. 2C:35-12, be sentenced to a term of imprisonment by the court. The term of imprisonment shall include the imposition of a minimum term which shall be fixed at, or between, one-third and one-half of the sentence imposed, during which the defendant shall be ineligible for parole. Notwithstanding the provisions of subsection a. of N.J.S. 2C:43-3, a fine of up to $300,000.00 may be imposed; [Emphasis added].
Our Legislature has determined by enacting N.J.S.A. 2C:35-5b(1) that the distribution of five ounces or more of certain controlled dangerous substances, such as cocaine, is a first degree crime. Except as provided in N.J.S.A. 2C:35-12, which allows for waiver of mandatory minimum and extended terms where there is a pre- or post-trial agreement, a defendant convicted under N.J.S.A. 2C:35-5b(1) must be sentenced to a term of imprisonment. Moreover, the term of imprisonment must include a period of parole ineligibility at or between one-third and one-half of the base term.
*490 Here, the trial court carefully analyzed and weighed the aggravating factors prior to the imposition of the sentence. The trial court specifically found aggravating factors numbers one (N.J.S.A. 2C:44-1a(1), nature and circumstances of the offense), three (N.J.S.A. 2C:44-1a(3), risk that defendant will commit another crime), five (N.J.S.A. 2C:44-1a(5), defendant is involved in organized criminal activity), seven (N.J.S.A. 2C:44-1a(7), defendant committed the offense for money) and nine (N.J.S.A. 2C:44-1a(9), need to deter defendant and others) to be applicable. In discussing the mitigating factors, the trial court found only number seven (N.J.S.A. 2C:44-1b(7), defendant had no previous criminal record) to be applicable. The trial court specifically rejected mitigating factor number eleven (N.J.S.A. 2C:44-1b(11), imprisonment would work excessive hardship) and clearly stated its reasons for the record. Moreover, before imposing sentence, the trial court stated that it felt the maximum sentence and parole ineligibility period were warranted.
In light of the foregoing, it is perfectly clear that the sentence complies with the provisions of the New Jersey Code of Criminal Justice and resulted from the trial court's meticulous and thorough analysis and balancing of the relevant mitigating and aggravating factors. Contrary to defendant's claim, the trial court's findings as to the mitigating and aggravating factors are supported by the record. For example, it is clear that the trial court's finding the nature and circumstances of the offense to be an aggravating factor was proper. Possession of five ounces of cocaine with intent to distribute is a first degree crime. Here, defendant was in possession of seven times that amount. Although it is true that the Legislature considered the amount of drugs involved in setting the degree of crime, it is settled "that the nature and circumstances of a drug offense include the amount of drugs involved." State v. Toro, 229 N.J. Super. 215, 226, 551 A.2d 170 (App.Div. 1988), certif. den., 118 N.J. 216, 570 A.2d 973 (1989).
*491 Moreover, defendant is mistaken when he asserts that consideration of the amount of drugs involved constitutes a "double penalty" in violation of State v. Yarbough, 100 N.J. 627, 645, 498 A.2d 1239 (1985), cert. den., 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986) and State v. Radziwil, 235 N.J. Super. 557, 575, 563 A.2d 856 (App.Div.), certif. granted, 118 N.J. 233, 570 A.2d 983 (1989). Yarbough and Radziwil hold that "[w]hen an essential element of a crime is a specific fact, that element may not be used as an aggravating factor to impose a sentence which is longer than the presumptive term or includes a parole ineligibility period." State v. Radziwil, supra, 235 N.J. Super. at 575, 563 A.2d 856. This rule would have been violated had the trial court found defendant's possession of enough drugs to constitute a first degree crime to be an aggravating factor. Instead, here the trial court merely noted that defendant had far more drugs in his possession than needed to constitute a first degree crime. Such comment involved no double counting. State v. Toro, supra, 229 N.J. Super. at 226, 551 A.2d 170.
Likewise, the trial court's finding that defendant will likely commit another offense as an aggravating factor was clearly justified. Although the fact that defendant had no prior record and apparently was an established businessman in his community tends to militate against this finding, defendant was found with a kilogram of cocaine in his possession. Clearly, this fact suggests that defendant had access to large amounts of drugs and would distribute again in the future if allowed to remain free. In any event, the trial court did "not give a large amount of weight to" this aggravating factor.
The record also supports the finding that defendant was involved in organized crime. As was set forth in State v. Toro, supra, 229 N.J. Super. at 227, 551 A.2d 170:
The trial judge also properly identified the likelihood that defendant was involved in organized criminal activity as an aggravating factor. As noted by the trial judge, most cocaine is grown in Central America and the importation, processing and distribution of the drug in this country involves an elaborate *492 criminal network. The amount of cocaine found in defendant's possession provides ample support for the trial judge's finding that defendant was a participant in that organized distribution network.
The trial court's finding of aggravating factor seven, to wit, that defendant acted with pecuniary motive, was obviously correct. As the trial court pointed out, defendant committed the offense pursuant to an agreement that he be paid for the commission of the offense. Contrary to defendant's argument, such involves no "double penalty." Defendant overlooks the fact that he could have been found guilty of N.J.S.A. 2C:35-5 if he merely gave the drugs to Villegas instead of selling them to him. N.J.S.A. 2C:35-5 does not require that money exchange hands.
Finally, there is ample evidential support for the trial court's finding of a need for deterrence. Such is recognized as an aggravating factor, especially where a person has been convicted of a drug offense.
In addition, the amount of cocaine found in defendant's possession, and the potential profit to be derived from its distribution, justify the trial judge's finding that the need for deterrence is an aggravating factor pertinent to defendant's sentencing. Id.

In short, the trial court's imposition of a 20-year base term was in accordance with the established principles of law and is fully supported by this record.
We are also satisfied that there is no merit in defendant's challenge to the imposition of the parole ineligibility term. The trial court was required to impose a parole ineligibility period pursuant to N.J.S.A. 2C:35-5b(1), and the term imposed here was within the limits set by the statute. Moreover, the length of the mandatory minimum term of ten years was consistent with the base term of 20 years and with the trial court's meticulous analysis and weighing of the aggravating and mitigating factors. See State v. Towey, 114 N.J. 69, 81-82, 552 A.2d 994 (1989).
Finally, we are compelled to comment on defendant's claim that the sentence was the product of vindictiveness on the *493 part of the prosecutor. There is nothing on the record to show or even suggest vindictiveness on the part of the prosecutor. The prosecutor's actions in offering a reduced term for a plea and seeking the maximum term upon a trial were constitutionally valid. As was stated in Alabama v. Smith, ___ U.S. ___, 109 S.Ct. 2201, 2206, 104 L.Ed.2d 865, 875 (1989), it is perfectly permissible for the State to threaten "a defendant with increased charges if he does not plead guilty, and [to follow] through on that threat if the defendant insists on his right to stand trial...." Absent proof of malicious behavior on the part of the State, which does not appear on this record, defendant's attempt to portray the prosecutor as vindictive falls short of the constitutional mark. Furthermore, defendant's reliance on Alabama v. Smith is misplaced. Smith stands for the rule that a presumption of vindictiveness does not apply when a sentence imposed after trial is greater than that previously imposed after a guilty plea. Smith has absolutely no bearing here as defendant rejected the State's plea offer and was therefore not sentenced on a guilty plea as was the case in Smith.
In sum, defendant cannot complain that he received a more severe sentence after a trial than he would have received had he pleaded guilty pursuant to a plea agreement. Defendant was fully aware that by rejecting the plea and trying his case, he ran the risk of a conviction and the imposition of a greater sentence.
Accordingly, the judgment of conviction and order for commitment under review are affirmed.