**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1947-24

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

EMMANUEL J. LOPEZ,

     Defendant-Appellant.

_____

        Argued October 7, 2025 – Decided December 11, 2025

        Before Judges Gooden Brown and DeAlmeida.

        On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Union County, Indictment No. 22-05-0360.

        Scott M. Welfel, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Scott M. Welfel, of counsel and on the briefs).

        Michele C. Buckley, Assistant Prosecutor, argued the cause for respondent (William A. Daniel, Union County Prosecutor, attorney; Michele C. Buckley, of counsel and on the brief).

PER CURIAM

By leave granted, defendant Emmanuel Lopez appeals from the December 10, 2024 Law Division order denying his second motion for reconsideration of a November 15, 2023 order. The November 15 order denied defendant's motion to dismiss his indictment charging him with second-degree unlawful possession of a firearm, N.J.S.A. 2C:39-5(b)(1). In the motion, defendant raised a Second Amendment challenge to New Jersey's age-based limitation on gun ownership encompassed in N.J.S.A. 2C:39-5(b)(1), criminalizing the possession of a handgun without a carry permit; N.J.S.A. 2C:58-3, prohibiting the issuance of a handgun purchase permit to those under twenty-one years of age; and N.J.S.A. 2C:58-4, establishing handgun carry permit requirements. Read together, these statutes effectively prohibit eighteen-to-twenty-year-olds from purchasing or openly carrying a handgun in New Jersey. We affirm the motion judge's ruling that defendant, who was nineteen years old at the time of the alleged offense, lacked standing to raise a Second Amendment claim because he failed to apply for a handgun carry permit. Based on our decision, we do not reach the constitutional issue.

A-1947-24

"For the purposes of this appeal, we assume the facts as alleged in the indictment," State v. Cobbs, 451 N.J. Super. 1, 5 (App. Div. 2017), and incorporate the facts recited in the judge's written decision accompanying the November 15, 2023 order:

> On November [2]6, 2021, Elizabeth [p]olice [o]fficers were patrolling the area of Fifth Street and East Jersey Street when they observed a group of men gathered at an intersection. Officers noticed a man in a red coat break away from the group and make a motion to his waistband area, shifting the area towards the center of his body. The officers believed the man's behavior indicated he was armed. Officers conducted a stop and identified the man as [nineteen]-year-old Emmanuel Lopez ("defendant Lopez"). Officers instructed defendant Lopez to interlock his fingers and place them on the back of his head. Upon doing this, officers observed the handle of a silver and black handgun protruding from defendant's waistband. Officers recovered a Taurus Model PT 1911 .45 caliber handgun, with four ball round .45 automatic TulAmmo bullets on defendant's person. Defendant Lopez did not have a permit to purchase a firearm or a firearms purchaser identification card.

A Union County grand jury returned a one-count indictment charging defendant with second-degree possession of a handgun without a carry permit, N.J.S.A. 2C:39-5(b)(1). Defendant moved to dismiss the indictment, arguing N.J.S.A. 2C:39-5(b)(1) was unconstitutional because the age restriction set forth

in N.J.S.A. 2C:58-4 and N.J.S.A. 2C:58-3 violated the Second Amendment. Defendant contended eighteen-to-twenty-year-olds were within "the people" protected by the Second Amendment and the nation's historical tradition of firearm regulation did not include prohibiting the possession of handguns by people in that age group.

Defendant further argued he did not have to apply for a permit to have standing to challenge the statute as he had made a "substantial showing" that applying would have been futile. To support his claim, defendant submitted his own certification averring he was familiar with the safe handling and operation of handguns from "practicing . . . with [his] uncle at the age of [sixteen] while visiting him in the Dominican Republic" and "visit[ing] two different gun ranges in New Jersey on two occasions." Defendant also certified he was not subject to any of the disqualifying disabilities set forth in N.J.S.A. 2C:58-3(c), with the exception of the age restriction. In addition, defendant submitted certifications from three individuals, each averring "know[ing d]efendant since 2002," and attesting "[i]f [d]efendant had asked [them] to endorse an application for a permit to carry a handgun in 2021, [they] would have endorsed the application and certified that [d]efendant is a person of good moral character and behavior."

4

The State opposed the motion, arguing that under New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022), New Jersey was permitted to enforce a permitting scheme placing limitations on handgun possession. Further, the State argued that defendant's challenge failed as he did not apply for a permit nor did he establish that he would have been able to obtain a permit but for the challenged age requirement.

The judge consolidated similar motions of other individuals not participating in this appeal. On November 15, 2023, after hearing argument, the judge issued an order and comprehensive written decision denying defendant's motion on the ground that defendant lacked standing to challenge the constitutionality of the permitting scheme as he had never applied for a permit. The judge did not reach the constitutional issue.

In his analysis, the judge relied on our decision in State v. Wade, 476 N.J. Super. 490 (App. Div.), leave to appeal denied, 255 N.J. 492 (2023). There, two defendants challenged the constitutionality of an unlawful possession of a handgun charge based on a different provision of the then-existing handgun carry permit statute—the "justifiable need" requirement. Id. at 495. We concluded those defendants lacked standing to assert their claims because they had not applied for and been denied a handgun carry permit. Id. at 511.

Defendant moved for reconsideration, arguing two newly decided cases from the United States Court of Appeals, Baughcum v. Jackson, 92 F.4th 1024 (11th Cir. 2024), and Lara v. Commissioner of Pennsylvania State Police, 91 F.4th 122 (3d Cir.), vacated sub nom. Paris v. Lara, 145 S. Ct. 369 (2024), spoke directly to the issue at hand and warranted reexamination of the original decision. In Lara, the Third Circuit held that eighteen-to-twenty-year-olds were encompassed in "[t]he words 'the people' in the Second Amendment" and "no founding-era law" supported "disarming people in that age group." Id. at 127. Therefore, the court struck as unconstitutional Pennsylvania's laws restricting eighteen-to-twenty-year-olds from openly carrying firearms during a state emergency. Id. at 126-27, 140. In Baughcum, the Eleventh Circuit held that members of a gun rights organization had standing to challenge a Georgia statute prohibiting individuals under twenty-one years of age from carrying firearms despite the members neither applying for nor being denied licenses. Id. at 1029, 1035.

Following oral argument, the motion judge entered an order on April 30, 2024, denying reconsideration. Defendant again moved for reconsideration, relying on Worth v. Jacobson, 108 F.4th 677, 698 (8th Cir. 2024), which invalidated as unconstitutional a similar age restriction statute, and two trial

court opinions concluding that <u>Wade</u> was not controlling because it would have been futile for defendants to apply for a handgun carry permit given the categorical age prohibition. After hearing argument, the judge denied the motion on December 10, 2024, and this appeal followed.

On appeal, defendant raises the following arguments for our consideration:

> BECAUSE ALL FEDERAL COURTS THAT REVIEWED STATE PERMITTING SCHEMES BARRING EIGHTEEN-TO-TWENTY-YEAR-OLDS FROM OBTAINING HANDGUN CARRY PERMITS HAVE HELD THAT THESE AGE RESTRICTIONS VIOLATE THE SECOND AMENDMENT, AND BECAUSE THE TRIAL COURT MISAPPLIED FEDERAL STANDING JURISPRUDENCE, THIS COURT SHOULD REVERSE AND REMAND FOR AN ORDER DISMISSING THE INDICTMENT.

> A. [Defendant] Has Standing To Challenge The Constitutionality Of New Jersey's Age Restriction On Handgun Carry Permits Without Having First Applied For Permits Because: (1) He Satisfied <u>Wade</u>'s Requirement To Demonstrate The Challenged Provision Made It Futile For Him to Apply And That He Was Otherwise Qualified; (2) Even If He Had Not, <u>Wade</u>'s Futility Test Is Wrong; And (3) He Brought A Facial Challenge To The Permitting Scheme.

7

1.    [Defendant] met Wade's futility test because he was statutorily ineligible for a permit due to the challenged age-restriction and he would have qualified for a permit but for this restriction.

2.    If this [c]ourt is not satisfied that [defendant] demonstrated he was otherwise qualified for a carry permit but for the age requirement, it should still find he had standing based on his demonstration of futility because futility does not require the challenger to show he was otherwise qualified for the permit.

3.    [Defendant] has standing to challenge the age requirement because he is arguing that the age requirement is facially void.

B.    New Jersey's Law Prohibiting Eighteen-To-Twenty-Year-Olds From Publicly Carrying Handguns For Self-Defense Is Not Consistent With The Nation's Historical Tradition Of Firearm Regulation.

C.    If This Court Holds That A Defendant Must Demonstrate He Was Otherwise Qualified In Order To Have Standing And Cannot Determine From The Record Whether [Defendant] Was Otherwise Qualified, It Should Remand For The Trial Court To Make That Assessment.

8

II.

Generally, "[t]he trial court's decision denying defendant's motion to dismiss [his] indictment is reviewed for abuse of discretion." State v. Saavedra, 222 N.J. 39, 55 (2015). Where, as here, the decision "relies on a purely legal question, . . . we review that determination de novo." State v. Twiggs, 233 N.J. 513, 532 (2018). See also State v. Fair, 256 N.J. 213, 227-28 (2024) ("We review the constitutionality of a statute de novo, owing no deference to the [lower court] in deciding a question of law."); Wade, 476 N.J. Super. at 500 (explaining questions of law involving "interpreting the Constitution and New Jersey's gun-carry permitting statutes" are reviewed de novo).

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Second Amendment protects the right of individual persons to keep and bear arms apart from service in a militia. Dist. of Columbia v. Heller, 554 U.S. 570, 582 (2008). The Amendment "is fully applicable to the [s]tates" through the Fourteenth Amendment. McDonald v. City of Chicago, 561 U.S. 742, 750 (2010). In short, Heller and McDonald "recognized that the Second and Fourteenth Amendments

9

protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." Bruen, 597 U.S. at 8-9.

Those precedents, however, do not preclude the State from regulating handgun possession. "Properly interpreted, the Second Amendment allows a 'variety' of gun regulations." Id. at 80 (Kavanaugh, J., concurring) (citing Heller, 554 U.S. at 636). The validity of State regulations of handgun possession is determined under the two-step approach adopted in Bruen:

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the [n]ation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."
>
> [Id. at 24 (quoting Konigsberg v. State Bar of Cal., 366 U.S. 36, 50 n.10 (1961)).]

The public carry of handguns has long been "the most closely-regulated aspect of" New Jersey's firearms statutes. In re Preis, 118 N.J. 564, 568 (1990). As early as 1882, New Jersey has regulated the carrying of handguns, and since 1905, it has required private citizens to obtain a permit before carrying firearms in public. Wade, 476 N.J. Super. at 503.

A-1947-24

According to N.J.S.A. 2C:39-5(b)(1), "[a]ny person who knowingly has in his possession any handgun . . . without first having obtained a permit to carry the same as provided in N.J.S.[A.] 2C:58-4, is guilty of a crime of the second degree." To obtain a permit to carry a handgun, applicants must follow a two-step process. First, the applicant must apply to the relevant law enforcement official—the police chief in the municipality or, in some instances, the Superintendent of the State Police. N.J.S.A. 2C:58-4(c). At the time of defendant's arrest, the application required certain biological information and the endorsement of "three reputable persons who have known the applicant for at least three years preceding the date of the application, and who shall certify . . . that the applicant is a person of good moral character and behavior." N.J.S.A. 2C:58-4(b) (2021); see also L. 2002, c. 131, §§ 2-3.

Next, the applicant must satisfy several criteria. See N.J.S.A. 2C:58-4; N.J.S.A. 2C:58-3(c); N.J.A.C. 13:54-2.1 to -2.10; Matter of M.U.'s Application for a Handgun Purchase Permit, 475 N.J. Super. 148, 171-72, 178-80 (App. Div. 2023). To qualify

> [a]n applicant must "not [be] subject to any of the disabilities set forth in [N.J.S.A. 2C:58-3(c)]," which consider the applicant's age, mental and physical health, criminal history, and potential danger to public safety. N.J.S.A. 2C:58-4(c); see also N.J.S.A. 2C:58-3(c). The applicant must also demonstrate

"familiar[ity] with the safe handling and use of handguns," evidenced by certified completion of a training course, submission of scores, or passage of a test. N.J.S.A. 2C:58-4(c); see also N.J.A.C. 13:54-2.4(b) and (c).

[Wade, 476 N.J. Super. at 504 (first alteration added).]

The age requirement in N.J.S.A. 2C:58-3(c) provides that an applicant must be at least twenty-one years old to be granted a handgun carry permit. N.J.S.A. 2C:58-3(c)(4). Additional requirements include the applicant demonstrating, among other things, that he or she: has no juvenile adjudications for certain weapons offenses; is not the subject of a domestic violence restraining order; has not violated certain types of court orders; has not been committed due to mental health issues; is not a fugitive or the subject of an open warrant; and has complied with liability insurance requirements. See N.J.S.A. 2C:58-3(c)(6), (7), (10)-(15); N.J.S.A. 2C:58-4(d)(4); N.J.S.A. 2C:58-4.3.[1]

---

[1] Before Bruen, an applicant also had to establish a "justifiable need to carry a handgun" based on an "urgent necessity for self-protection." N.J.S.A. 2C:58-4(c) (2021) (repealed 2022). Bruen's holding that New York's subjective "good cause" requirement for issuance of a permit to possess a handgun was unconstitutional, rendered New Jersey's similar "justifiable need" provision invalid. See Wade, 476 N.J. Super. at 509. But the balance of New Jersey's permitting statutes survived. Ibid. N.J.S.A. 2C:58-3 and 58-4 were subsequently amended, effective December 22, 2022, to conform the statutes to Bruen's holding. L. 2022, c. 131, §§ 2-3. The 2022 amendments changed the permit qualifications in other ways not germane to this appeal.

After submission of the application, the chief or superintendent conducts the necessary background checks. N.J.S.A. 2C:58-4(c). At the time of defendant's alleged offense, if the chief or superintendent approved the application, the applicant had to present it to the Superior Court for review. N.J.S.A. 2C:58-4(d) (2021). If the court was considering denying the application, it was required to hold a hearing to allow the applicant "to proffer reasons why he [or she] satisfies the standard and respond to any questions from the judge." In re Application for Permit to Carry a Handgun of Carlstrom, 240 N.J. 563, 572 (2020).[2] If the chief or superintendent instead denies the application, then the applicant may request a hearing in the Superior Court. N.J.S.A. 2C:58-4(e). A permit applicant dissatisfied with a decision of the Superior Court may appeal that decision "in accordance with law and the rules governing the courts of this State." Ibid.

We turn first to the threshold question of whether defendant has standing to challenge the statutory prohibition on issuing handgun carry permits to eighteen-to-twenty-year-olds. As we explained in Wade,

---

[2] The 2022 amendments removed the requirement of judicial review for approved applications. Under the current statute, a decision by a chief or superintendent approving an application is final. Compare N.J.S.A. 2C:58-4(d) (2021) with N.J.S.A. 2C:58-4(d); see also L. 2022, c. 131, § 3.

[a] defendant may raise a defense that the crime charged in an indictment or accusation "is based on a statute or regulation . . . which is unconstitutional or invalid in whole or in part." R. 3:10-2(d). To make that challenge, however, the defendant must have standing to raise the constitutional objection. State v. Saunders, 75 N.J. 200, 208-09 (1977). Accordingly, the defendant "must show sufficient injury before his [or her challenge] will be heard." State v. Varona, 242 N.J. Super. 474, 487 (App. Div. 1990). "Th[is] rule limits a criminal defendant to constitutional claims related to his [or her] own conduct [and] rests on the principle that legislative acts are presumptively valid and will not be overturned on the basis of hypothetical cases not actually before the court." Saunders, 75 N.J. at 208-09.

[476 N.J. Super. at 505 (first alteration added).]

In Wade, two defendants, Wade and Stringer, challenged their possession of a handgun without a permit charges, N.J.S.A. 2C:39-5(b)(1), on the ground that Bruen invalidated the justifiable need requirement in the handgun carry permit statute at the time of the alleged offenses. 476 N.J. Super. at 495. However, neither defendant had applied for a handgun carry permit prior to the alleged offenses. Ibid. We held:

Generally, to establish standing to challenge an allegedly unconstitutional permit statute, the challenger must have applied for a permit or license under the statute. See, e.g., United States v. Decastro, 682 F.3d 160, 164 (2d Cir. 2012); Westfall v. Miller, 77 F.3d 868, 872-73 (5th Cir. 1996); Kendrick v. Bruck, 586 F. Supp. 3d 300, 308 (D.N.J. 2022). Nevertheless, there is a recognized exception to the submission

14

requirement if the challenger can "make a substantial showing that submitting to the government policy would [have been] futile." Bruck, 586 F. Supp. 3d at 308 (citing Ellison v. Am. Bd. of Orthopaedic Surgery, 11 F.4th 200, 206 (3d Cir. 2021)); see also Decastro, 682 F.3d at 164; Jackson-Bey v. Hanslmaier, 115 F.3d 1091, 1096 (2d Cir. 1997).

[Wade, 476 N.J. Super. at 505-06 (alteration in original).]

We concluded neither defendant established futility because they did not make a substantial showing they would have been granted a handgun carry permit but for the justifiable need requirement. Id. at 506-07. "Wade's counsel submitted a certification representing that Wade had no other disqualifying factors and that he would have qualified to receive a permit but for the justifiable need requirement[, and] Stringer and his counsel did not submit a certification concerning Stringer's qualifications for a permit." Id. at 506. Thus, we concluded, neither defendant "established the factual basis for challenging New Jersey's gun-permit statutes. Stringer had provided no factual basis whatsoever. The certification submitted by Wade's counsel [was] not based on counsel's personal knowledge; rather it [was] based on information received from his client and, therefore, [was] insufficient to establish facts in dispute." Ibid. We determined because the record did not establish "Wade [or Stringer] would have been able to comply with [all of the other statutory] requirements . . . the record

15

[did] not reflect that it would have been futile for Wade [and Stringer] to have applied for a permit even in the absence of the justifiable need provision." Id. at 506-07.

We reach the same conclusion here. Defendant certified he is not subject to the disabilities set forth in N.J.S.A. 2C:58-3(c), apart from the age restriction, averred he is familiar with the safe handling and operation of handguns, and provided supporting certifications from three individuals attesting to his good character. Although defendant's certifications are more detailed than what was offered in Wade, they are still woefully lacking.

First, defendant did not provide any documentation showing he satisfied the requirements of N.J.A.C. 13:54-2.4, requiring that "[t]horough familiarity with the safe handling and use of handguns shall" be demonstrated through one of three ways:

> 1. Completion of a firearms training course substantially equivalent to the firearms training approved by the Police Training Commission as described by N.J.S.A. 2C:39-6[(j)];
>
> 2. Submission of an applicant's most recent handgun qualification scores utilizing the handgun(s) he or she intends to carry as evidenced by test firings administered by a certified firearms instructor of a police academy, a certified firearms instructor of the National Rifle Association, or any other recognized certified firearms instructor; or

A-1947-24

3. Passage of any test in this State's laws governing the use of force administered by a certified instructor of a police academy, a certified instructor of the National Rifle Association, or any other recognized certified instructor.[3]

[N.J.A.C. 13:54-2.4(b).]

Instead, defendant's demonstration that he is familiar with the safe operation and use of handguns rests on his prior experience practicing in the Dominican Republic with his uncle as a teenager and two visits to New Jersey gun ranges. This is insufficient to satisfy the requirements of N.J.A.C. 13:54-2.4(b) and (c) and, as such, defendant would not have been eligible for a gun carry permit on the documentation supplied. Second, the certifications endorsing defendant's application and attesting to defendant's good moral character provided no information about the three certifying individuals to assess whether they were "reputable persons" as required by N.J.S.A. 2C:58-4(b).

Defendant's submissions pale in comparison to the robust record created through the application process. A determination that an applicant is not subject to the disabilities enumerated under N.J.S.A. 2C:58-3(c) requires the police

---

[3] The information must be "accompanied and validated by certifications of the appropriate instructor(s)." N.J.A.C. 13:54-2.4(c).

chief or superintendent to fingerprint the applicant and investigate any records that could tend to show a disability or a lack of "good character." The official must determine that, among other things, the issuance of the permit would not be against the "interest of the public health, safety[,] or welfare." N.J.S.A. 2C:58-3(c)(5). "[T]he public health, safety[,] or welfare provision has largely been applied in conjunction with the . . . [N.J.S.A. 2C:58-3(c) disabilities], but where the facts do not quite rise to the level of those disabling conditions." M.U., 475 N.J. Super. at 180.

Instances of conduct that are not necessarily encompassed in the list of disabilities found at N.J.S.A. 2C:58-3(c), but can nonetheless impact the grant or denial of an application, include "negative police interactions," "road rage incident[s]," "vandalism," as well as "convict[ions] of certain disorderly persons offenses," "convict[ions] of driving under the influence and refusing to submit to chemical tests," "documented or admitted histor[ies] of domestic violence disputes, although no convictions for domestic violence," and conduct evidencing "disregard[ for] the State's gun laws." M.U., 475 N.J. Super. at 164, 166, 179 (citations omitted).

On this record, we cannot conclude defendant's purported right to carry a handgun in public was abridged by the statutes' age requirement or that he has

standing to challenge the constitutionality of the gun possession charge he faces.

Our holding in <u>Wade</u> resonates here:

> The insufficient record supporting defendants' constitutional challenge illustrates why a motion to dismiss criminal charges is not the proper venue for demonstrating that defendants would have been granted a gun-carry permit but for the justifiable need requirement. If defendants had applied for gun-carry permits, there would be a complete record of why they were not granted the permits. In other words, we would not be left to speculate that defendants were denied the permits because of the justifiable need[] requirement.
>
> [<u>Id.</u> at 507.]

The absence of a record establishing defendant would have been denied a handgun carry permit solely because of his age underscores the reason for the longstanding rule that "law-abiding citizens are not free to ignore a statute and presume that they would have been granted a permit but for one potentially invalid provision of a permit statute." <u>Ibid.</u> (citing <u>Borough of Collingswood v. Ringgold</u>, 66 N.J. 350 (1975)). A self-serving certification standing alone is no substitute for a comprehensive investigation. To hold otherwise would obviate the need for an investigative component to the permitting scheme. Accordingly, defendant has not established futility because he has failed to make a substantial showing that, but for the age requirement, he would have been granted a gun-carry permit.

For the same reasons articulated in <u>Wade</u>, we also reject defendant's contention he has standing by virtue of the fact that he is bringing a facial challenge to the constitutionality of the statute:

> Defendants contend that their challenge to the facial constitutionality of N.J.S.A. 2C:58-4 (2018) "is another basis to find that [they have] standing despite never having applied for a permit." They rely on cases concerning the First Amendment and argue that a person faced with a facially invalid licensing law can disregard the law and contest its validity if they are charged with violating it. <u>See</u> <u>Shuttlesworth v. City of Birmingham</u>, 394 U.S. 147, 151 (1969); <u>Staub v. City of Baxley</u>, 355 U.S. 313, 319 (1958); <u>Lovell v. City of Griffin</u>, 303 U.S. 444, 452 (1938).
>
> We reject that argument. No New Jersey decision or federal decision addressing New Jersey's gun-permit statutes has held that a defendant has standing to challenge the permit statutes without first having applied for a permit. . . . Indeed, "[w]hile First Amendment cases have permitted standing for plaintiffs who have not sought permits, Second Amendment cases have not." <u>Bruck</u>, 586 F. Supp. 3d at 309 (collecting relevant cases). We similarly decline to apply wholesale First Amendment caselaw to a Second Amendment analysis.
>
> [<u>Wade</u>, 476 N.J. Super. at 508 (alterations in original) (citations reformatted).]

Although we could address defendant's constitutional arguments despite the absence of standing, <u>Wade</u>, 476 N.J. Super. at 495 (citing <u>Petro v. Platkin</u>, 472 N.J. Super. 536, 564 (App. Div. 2022)), we elect not to do so.

20

We have considered defendant's remaining arguments, including his request to remand this matter to the Law Division for an evidentiary hearing with respect to whether he would have satisfied the then-existing statutory criteria for issuance of a handgun carry permit other than the age requirement, and conclude they are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division