ALVAREZ, P.J.A.D.
*108 On July 22, 2016, we affirmed defendant Amy Locane's convictions after a jury trial. She was found guilty of the lesser-included offense of second-degree vehicular homicide, N.J.S.A. 2C:11-5(a), third-degree assault by auto, N.J.S.A. 2C:12-1(c)(2), and related motor vehicle offenses.
Because of errors in the sentence, however, we remanded the matter. Contrary to our decision, the trial judge on January 13, 2017, imposed the same terms of imprisonment, employing virtually the same analysis of statutory aggravating and mitigating factors. See N.J.S.A. 2C:44-1. We again vacate and remand, this time directing that a different judge resentence defendant.
The circumstances of the offenses found in the trial record are fully described in our earlier unpublished opinion. State v. Locane, No. A-2728-12, 2016 WL 3943370 (N.J.Super. App. Div. July 22, 2016). We provide new factual circumstances developed during the second sentence hearing in the relevant sections of our discussion. By way of introduction, it is necessary only to reiterate that the *109 State's forensic psychopharmacologist testified at the trial that when defendant crashed into the victims' car, her blood alcohol concentration (BAC) was likely .23 percent. She was driving at approximately fifty-three miles per hour in a thirty-five mile per hour zone.
The driver of the car she struck, Fred Seeman (Seeman),[1] was severely injured. He had been turning into his driveway at the moment of impact. Seeman's wife, Helene, died from her injuries at the scene. Her death was witnessed by the Seemans' youngest son, then a teenager, who ran out *502 of the house when he heard the sound of the collision.
I.
First Sentence and Remand
Defendant was first sentenced on February 14, 2013. The trial judge then downgraded the lesser-included second-degree conviction for vehicular homicide to a third-degree crime. He imposed a term of three years' imprisonment on that offense, but did not include the three-year parole bar mandated by N.J.S.A. 2C:11-5(b)(1). The judge sentenced defendant to a concurrent three-year term of imprisonment on the assault by auto conviction. The State appealed the sentence; defendant cross-appealed the conviction.
Prior to the sentence date, defendant voluntarily reported to the county jail and was therefore in custody when sentenced. She was released from prison on June 12, 2015, after serving eighty-five percent of her three-year sentence as called for by the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. She is presently serving her parole supervision term as required by the statute.
Significant time passed between the conviction and the direct appellate review that followed because, after being represented by private counsel during the trial, defendant sought the services of *110 the Public Defender's Office, a request initially opposed by the prosecutor. See State v. A.L., 440 N.J. Super. 400, 114 A.3d 365 (App. Div. 2015).
In our prior decision on the direct appeal, we found the sentence illegal because the judge failed to impose the mandatory three-year parole bar. Locane, 2016 WL 3943370, at *20-21 ; see N.J.S.A. 2C:11-5(b)(1). The judge also failed to apply the two-step analysis required by N.J.S.A. 2C:44-1(f)(2) prior to a conviction downgrade. Locane, 2016 WL 3943370, at *21-23;see State v. Megargel, 143 N.J. 484, 495, 673 A.2d 259 (1996). Furthermore, he overlooked the single most important factor in the sentencing calculus: the severity of the offense. Locane, 2016 WL 3943370, at *21-22 ; see Megargel, 143 N.J. at 500, 673 A.2d 259.
We explained in our decision that in determining whether the interests of justice demanded a downgrade of the offense, defendant's overall character was not to be included because the statute was offense-oriented. See id. at 499, 673 A.2d 259 ; State v. Lake, 408 N.J. Super. 313, 328-29, 974 A.2d 1115 (App. Div. 2009). The trial judge justified the downgrade primarily because of the impact that defendant's imprisonment would have on her children, and her successful efforts at controlling her alcoholism. We reiterated black-letter law that the focus of the downgrade decision must be the severity of the crime, not defendant's personal circumstances. See State v. Read, 397 N.J. Super. 598, 612, 938 A.2d 953 (App. Div. 2008).
Finally, we directed the judge when resentencing defendant to revisit the impact of State v. Yarbough, 100 N.J. 627, 630, 498 A.2d 1239 (1985). In the 2013 sentencing decision, the judge had ignored the severity of defendant's conduct. See State v. Abdullah, 184 N.J. 497, 515, 878 A.2d 746 (2005) ; State v. Rogers, 124 N.J. 113, 121, 590 A.2d 234 (1991).
The trial judge during the difficult and lengthy trial committed no reversible error. Out of an abundance of respect for that significant and noteworthy accomplishment, we couched reversal of the sentencing decision in neutral terms. But we clearly explained *111 that the sentence was erroneous, beginning with the failure to impose the mandated parole bar, followed by the failure to adhere to the statutory analysis on the downgrade of the second-degree *503 conviction to a third, and ending with the failure to impose consecutive sentences for the grave harm inflicted on two separate victims. See State v. Carey, 168 N.J. 413, 428, 775 A.2d 495 (2001) ("Crimes involving multiple deaths or victims who have sustained serious bodily injuries represent especially suitable circumstances for the imposition of consecutive sentences.").
Nullification of Mandatory Parole Bar by Alleyne v. United States; Downgrade of Third-Degree Offense
In the intervening years between the first and second sentence hearings, the law changed. The State's appeal and defendant's cross-appeal were pending when the United States Supreme Court decided Alleyne v. United States, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). Alleyne stands for the proposition that a mandatory minimum sentence, such as the three-year parole bar[2] found in our vehicular homicide statute, violates the Sixth Amendment right to a jury trial when a fact upon which it is predicated, such as intoxication, is not submitted to the jury for their determination. Alleyne, 570 U.S. at 115-16, 133 S.Ct. 2151. In other words, unless a jury finds a defendant was intoxicated when the homicide occurred, no sentence enhancement can be imposed.
In State v. Grate, 220 N.J. 317, 106 A.3d 466 (2015), our own Supreme Court applied Alleyne to a statute that requires imposition of a mandatory minimum sentence when the sentencing judge, not a jury, finds that a defendant is involved in organized criminal activity, N.J.S.A. 2C:39-5(i). Grate, 220 N.J. at 323-24, 106 A.3d 466. The Court held that a mandatory minimum sentence, *112 when based on a judicial finding of fact, "cannot survive constitutional scrutiny." Ibid.
The indictment in this case, which charged first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1), made no mention of defendant's intoxication. Neither did the verdict sheet submitted to the jury, which included the option of the lesser-included second-degree vehicular homicide offense.
N.J.S.A. 2C:11-5(a) states that "[p]roof that the defendant was driving while intoxicated in violation of R.S. 39:4-50... shall give rise to an inference that the defendant was driving recklessly." N.J.S.A. 2C:11-5(b)(1) then goes on to state that when a defendant operates a motor vehicle
with a blood alcohol concentration at or above the prohibited level as prescribed in R.S. 39:4-50, ... the defendant shall be sentenced to a term of imprisonment by the court. The term of imprisonment shall include the imposition of a minimum term. The minimum term shall be fixed at or between, one-third and one-half of the sentence imposed by the court or three years, whichever is greater, during which the defendant shall be ineligible for parole.
Lastly, N.J.S.A. 2C:11-5b(2) provides "[t]he court shall not impose a mandatory sentence pursuant to paragraph (1) of this subsection unless the grounds therefor have been established at a hearing." The hearing can take place "at the time of sentencing," and requires that the prosecutor establish by a preponderance of the evidence that defendant's BAC was at or above the .08 level found in N.J.S.A. 39:4-50. This procedure, as the trial judge found during the remand sentence hearing, *504 was unconstitutional after the Alleyne decision. The doctrine clearly applies to cases, such as this one, that were in the pipeline after the date of decision. See Grate, 220 N.J. at 335, 106 A.3d 466.
The Alleyne issue was not raised on appeal. We should have, but did not, sua sponte consider the effect of Alleyne and Grate on our remand decision. At the remand sentence proceeding, the trial judge correctly concluded that he could not impose the three-year minimum parole bar.
*113 The trial judge also downgraded the third-degree offense of assault by auto related to Seeman's injuries to a fourth-degree offense. N.J.S.A. 2C:12-1(c)(2) states that "assault by auto ... is a crime of the third degree if the person drives the vehicle while [intoxicated] in violation of R.S. 39:4-50... and serious bodily injury results." N.J.S.A. 2C:12-1(c)(1) makes a person guilty of assault by auto when a "person drives a vehicle ... recklessly and causes either serious bodily injury or bodily injury to another. Assault by auto ... is a crime of the fourth degree if serious bodily injury results."
Since the jury made no findings as to defendant's intoxication, grading the crime as a third-degree offense was no longer constitutional. The conviction could survive only if molded to the fourth-degree crime defined in the statute.
The Remand Sentence
The trial judge understood the remand as requiring him only to more fully explain his reasons for the sentence. He supported this view by citing to the portion of our decision in which we said, as appellate courts often do, that we took no position with regard to any new sentence he might impose. In reiterating the same perspective he expressed during the first sentencing proceeding, the judge disregarded our extensive discussion regarding the legal standard for a downgrade. As he did at the initial sentencing hearing, the judge on remand focused on the personal circumstances particular to this defendant and not the severity of the crimes she had committed.
After explaining that Alleyne prevented the imposition of a parole bar on the second-degree offense and mandated the reduction of the third-degree assault to a fourth-degree offense, the judge added "[t]he purpose of sentencing law starts with the proposition that our [s]tatutes address correction and rehabilitation of offenders, differentiation among offenders, with a view toward individualization, and justness in their treatment."
*114 The judge again gave slight weight to aggravating factor nine. N.J.S.A. 2C:44-1(a)(9). He found in mitigation factors two, four, six, eight, nine, and eleven. N.J.S.A. 2C:44-1(b)(2), (4), (6), (8), (9), (11). The judge again downgraded the vehicular homicide from a second-degree offense to a third-degree crime, imposing the lowest possible term of imprisonment within that range. He sentenced defendant to precisely the same term on the vehicular homicide-a three-year term of imprisonment-with an eighteen-month sentence on the now fourth-degree assault by auto.
Because the trial judge was presented with evidence that defendant had been sober since the conviction, he opined that aggravating factor nine had slight weight, and he found that there was no need to deter her from future acts of drunken driving. The judge gave no weight to the need for general deterrence.
In 2017, the judge focused, as he did in 2013, on mitigating factor eleven, the potential harm incarceration would inflict on defendant's children. He was presented with a psychological report stating that defendant's reincarceration would traumatize her children and potentially have lifelong *505 consequences. At the time of the second sentence, defendant was divorced, the children were in the sole custody of their father, and they saw their mother every other weekend and one evening a week. The youngest child, who suffers from Crohn's Disease, had physically stabilized, and was no longer dependent upon her mother for basic nutrition, as was alleged during the first sentence hearing.
As to the downgrade, the judge stated that there was "no compelling, or persuasive reason to return this [d]efendant to prison." He added, "[a]lthough the degree of crime is the focus of the sentence, facts personal to the [d]efendant may be considered in the sentencing process." Since he viewed defendant's offense as unlikely to recur, he considered it unnecessary to impose even a five-year sentence, the lowest in the second-degree range for vehicular homicide. He calculated that a five-year sentence would require defendant to return to prison for a minimum of 20.4 *115 months under NERA, while serving "no legitimate sentencing purpose, other than retribution."
That defendant killed one person and significantly injured another, the judge opined, did not "rule the day." He added that in viewing "the fairness of the overall sentence," "[d]efendant's conduct may constitute multiple offenses, [but] the sentencing phase concerns the disposition of a single, not a multiple human being."
The judge described Yarbough as a guideline which left a "fair degree of discretion with the sentencing court." Although two victims might seem to require a consecutive sentence, "[a] qualitative analysis [rendered] a different result." Focusing on his favorable view of defendant's rehabilitative efforts after the accident, he considered a concurrent sentence to be appropriate.
The judgment of conviction states that the court found aggravating factor nine, and mitigating factors six, seven, eight, nine, and eleven. N.J.S.A. 2C:44-1(b)(7). The judgment also states that:
under State v. Yarbough, courts have a duty to look at an individual offender in balancing the aggravating and mitigating factors to determine the proper range of sentence. State v. Yarbough, 100 N.J. 627, 636, 498 A.2d 1239 (1985), cert. den[ied], 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986). Aggravating and mitigating factors are utilized to insure that sentencing is individualized without being arbitrary. The factors insure that the sentence imposed is tailored to the individual offender and to the particular crime he or she committed. State v. Sainz, 107 N.J. 283, 289, 526 A.2d 1015 (1987).
The judgment further noted that aggravating factor nine was accorded only "minimal weight."
In a subsequent judgment filed on February 1, 2017, titled "Form Correction," the judge added that "because [defendant] was intoxicated ... mitigating factor [two] can be applied, but it is assigned minimal weight in the balance, since it is fairly assumed that while an intoxicated driver does not contemplate harm will result, certainly she should have." N.J.S.A. 2C:44-1(b)(2).
The State raises the following points for our consideration:
Point One
DEFENDANT'S SENTENCE MUST BE VACATED BECAUSE THE TRIAL COURT FAILED TO FOLLOW THE SENTENCING GUIDELINES IN THE
*116 CODE, THE CONTROLLING CASE LAW, AND THE APPELLATE DIVISION'S REMAND OPINION.
A. Trial Court Erred By Using The Same Evidence To Satisfy Both *506 Prongs Of The Megargel Two-Part Test.
B. Trial Court Erroneously Cited To State v. Mirakaj As Support For A Sentencing Downgrade.
C. The Trial Court Mistakenly Downgraded A Crime To Which The Legislature Attached An Enhanced N.E.R.A. Penalty.
D. The Trial Court Failed To Maintain An 'Inexorable Focus' On The Crime When Imposing Sentence.
E. The Trial Court Erred When It Found That Vehicular Homicide Is Similar To Assault-By-Auto.
Point Two
DEFENDANT'S SENTENCE MUST BE VACATED BECAUSE THE TRIAL COURT FAILED TO PROPERLY APPLY THE YARBOUGH GUIDELINES AND THE "STRONG PRESUMPTION" FAVORING CONSECUTIVE SENTENCES IN VEHICULAR HOMICIDE CASES.
II.
Defendant alleges that any resentencing that eliminates the third-degree downgrade on the vehicular homicide would violate both her double-jeopardy rights and constitutional principles of fundamental fairness. She further contends that to impose consecutive, as opposed to concurrent, terms would be equally violative of her double jeopardy and fundamental fairness rights. We address those arguments first.
III.
The Double Jeopardy Clauses of the federal and state constitutions prohibit multiple punishments for the same offense, and any increase in sentence after the service of the sentence has begun. U.S. Const. amend. V ; N.J. Const. art. I ¶ 11. However, the protection does not apply if defendant did not have an expectation of finality. State v. Roth, 95 N.J. 334, 344, 471 A.2d 370 (1984) (adopting the test set forth in United States v. DiFrancesco, 449 U.S. 117, 133, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980) ).
*117 A defendant has no expectation of finality in a sentence when the State exercises a statutory right to appeal or when the sentence is illegal. Ibid.; State v. Sanders, 107 N.J. 609, 619-21, 527 A.2d 442 (1987). A sentence is illegal if it "exceeds the maximum penalty provided in the Code for a particular offense," is "not imposed in accordance with law," or fails to include a mandatory sentencing requirement. State v. Acevedo, 205 N.J. 40, 45, 11 A.3d 858 (2011) (citing State v. Murray, 162 N.J. 240, 247, 744 A.2d 131 (2000) ); State v. Hyland, 452 N.J. Super. 372, 381, 174 A.3d 538 (App. Div. 2017). An illegal sentence may be corrected at any time prior to its completion. State v. Schubert, 212 N.J. 295, 309-11, 53 A.3d 1210 (2012).
Defendant's downgraded sentence is not illegal per se because it is an authorized disposition. That the analysis was incorrectly conducted does not make it illegal, because it does not stray outside the boundaries of third-degree offenses.
The State's right to challenge the downgrade stems from N.J.S.A. 2C:44-1(f)(2). That statute provides that when a sentencing court downgrades a first or second degree offense, the "sentence shall not become final for 10 days in order to permit the appeal of such sentence by the prosecution." The State appealed within that window. The constitutionality of that provision is long-established. Roth, 95 N.J. at 345, 471 A.2d 370.
Pursuant to Rule 2:9-3(d), upon the State's filing of a notice of appeal, "execution of sentence shall be stayed pending *507 appeal," but the "defendant may elect to execute a sentence stayed by the State's appeal." If the defendant elects to begin service of the sentence pending appeal, "such election shall constitute a waiver of the right to challenge any sentence on the ground that execution has commenced." Ibid.; see also Sanders, 107 N.J. at 620, 527 A.2d 442 (a defendant has no expectation of finality in a lenient sentence that the State has appealed, and thus, reversal of the sentence does not offend double jeopardy principles); State v. Eigenmann, 280 N.J. Super. 331, 336, 655 A.2d 452 (App. Div. 1995) (a defendant waives a double jeopardy challenge if the *118 defendant serves the sentence despite the imposition of a stay pursuant to Rule 2:9-3(d) ).
Here, the State exercised its right to appeal the downgrade initially imposed and obtained a stay of the sentence. Defendant nonetheless chose to serve her sentence despite the stay. She completed eighty-five percent of her three-year prison term prior to our direct appeal decision, and was released on June 12, 2015. On that date, she began three years of parole supervision. On remand, the trial judge again downgraded the second-degree conviction. The State obtained a stay and filed a notice of appeal challenging the sentence. Defendant continued on parole supervision.
Because defendant turned herself in before she was sentenced, and never sought release pending appeal, she has waived the right to challenge any increase on remand. R. 2:9-3(d). The waiver applies not only to the initial appeal, but to this appeal as well.
Defendant has always known that her sentence was subject to correction; she had no reasonable expectation of finality in her sentence. See Schubert, 212 N.J. at 315, 53 A.3d 1210 (noting that the State's continued challenges negated a defendant's expectation of finality in the sentence). Therefore, vacating her downgraded sentence does not offend principles of double jeopardy.
Nor is defendant protected by double jeopardy considerations from a harsher sentence on remand. Defendant waived the double jeopardy challenge by choosing to serve her sentence despite the stay. Sanders, 107 N.J. at 620, 527 A.2d 442 ; Eigenmann, 280 N.J. Super. at 336, 655 A.2d 452 ; R. 2:9-3(d). Additionally, parole supervision means she is still serving her sentence.
As we explained in State v. Ciancaglini, 411 N.J. Super. 280, 289, 986 A.2d 1 (App. Div. 2010), rev'd on other grounds, 204 N.J. 597, 10 A.3d 870 (2011), while the double jeopardy clause protects against multiple punishments for the same offense,
*119 [i]t does not permit a defendant to retain a lesser sentence mistakenly imposed contrary to law. See [ State v. Baker, 270 N.J. Super. 55, 71-77, 636 A.2d 553 (1994) ]. A defendant's double jeopardy rights are not violated by imposition of a more severe sentence upon the State's successful appeal where the sentence was illegal or the State otherwise was granted the right to appeal a lenient sentence. State v. Kirk, 243 N.J. Super. 636, 643, 581 A.2d 115 (App. Div. 1990) ; State v. McCourt, 131 N.J. Super. 283, 288, 329 A.2d 577 (App. Div. 1974) ; see N.J.S.A. 2C:44-1(f)(2) ; State v. Sanders, 107 N.J. 609, 621, 527 A.2d 442 (1987).
As an alternative ground prohibiting a sentence increase on remand, defendant contends that additional prison time will "clearly violate[ ] her fundamental fairness right to be free from egregious official oppression and harassment[ ]" given the length of time that has passed since the crime and her release from prison. She *508 also underscores the trial judge's finding that there is no need to deter her, and that her children may suffer permanent and serious psychological harm if she is again separated from them.
Defendant draws support from State v. Abbati, 99 N.J. 418, 423-24, 493 A.2d 513 (1985), where the Court affirmed the dismissal with prejudice of an indictment after two prosecutions had resulted in hung juries. The Abbati Court held: "The anxiety, vexation, embarrassment, and expense to the defendant of continual reprosecution where no new evidence exists is a proper subject for the application of traditional notions of fundamental fairness and substantial justice." Id. at 430, 493 A.2d 513.
The Abbati decision, however, does not apply here. The State has twice had to timely challenge an unsupported downgrade. The challenge had merit in the first appeal, and continues to have the same merit today. The length of time that has passed since the crimes and defendant's release from prison is a result of the inevitable delays inherent in the process. It is not the effect of some arguably oppressive State action against a citizen. In Abbati, a third trial would have been unwarranted, and likely would have produced either an acquittal or yet another hung jury.
In this case, a third sentence hearing is legally necessary. It is necessary for the public interest and the victims' rights to be figured into the sentencing equation. In sum, neither double *120 jeopardy nor notions of due process and fundamental fairness preclude the State's downgrade challenge in this appeal.
IV.
We review sentences deferentially, ordinarily affirming even where we would have arrived at a different result. State v. Lawless, 214 N.J. 594, 606, 70 A.3d 647 (2013). The classic expression of the abuse-of-discretion review standard is that we ask only if legislative guidelines have been followed, if competent credible evidence supports each finding of fact upon which the judge based the sentence, and, in addition, decide whether application of the facts to the law is such a clear error of judgment that it shocks the judicial conscience. Roth, 95 N.J. at 364-65, 471 A.2d 370. This sentence shocks our judicial conscience, a statement ordinarily employed when a sentence is excessive-but warranted in this case where the sentence was excessively lenient because of erroneous findings and qualitative weighing of aggravating and mitigating factors.
The assessment of statutory aggravating and mitigating sentencing factors must be fully supported by the evidence. "[T]here is more discretion involved in identifying mitigating factors than in addressing aggravating factors." State v. Blackmon, 202 N.J. 283, 297, 997 A.2d 194 (2010). The purpose served by the statutorily defined aggravating and mitigating factors is to advance the "dominant goal" of the New Jersey Code of Criminal Justice, that there be uniformity in sentencing. Id. at 296, 997 A.2d 194 (citing State v. Kromphold, 162 N.J. 345, 352, 744 A.2d 640 (2000) ). The aggravating and mitigating factors create a common framework within which all judges must fashion a sentence, which will be sustained when properly balanced and supported by competent credible evidence. State v. Case, 220 N.J. 49, 65, 103 A.3d 237 (2014).
The trial judge's legal analysis was not significantly different the second time he sentenced defendant than it was on the first. The court did not properly: assess the statutory aggravating and *121 mitigating factors; apply the standards for the downgrade of a sentence; or apply the principles enunciated in Yarbough. *509 V.
a.
Having decided that defendant's constitutional rights are not violated by reversal of the downgrade, we consider whether it was legally justified. A sentencing court may downgrade a first- or second-degree offense to one degree less for sentencing purposes. The relevant statute provides:
In cases of convictions for crimes of the first or second degree where the court is clearly convinced that the mitigating factors substantially outweigh the aggravating factors and where the interest of justice demands, the court may sentence the defendant to a term appropriate to a crime of one degree lower than that of the crime for which he was convicted.
[ N.J.S.A. 2C:44-1(f)(2).]
To warrant a downgrade, the court must first find that the mitigating factors substantially outweigh the aggravating factors. Second, the court must find that there are "compelling" reasons "in addition to, and separate from," the mitigating factors, which require the downgrade in the interest of justice. State v. Jones, 197 N.J. Super. 604, 607, 485 A.2d 1063 (App. Div. 1984).
The focus remains on the crime, as the downgrade statute "is an offense-oriented provision." State v. Lake, 408 N.J. Super. 313, 328, 974 A.2d 1115 (App. Div. 2009). Where the "surrounding circumstances of an offense [ ] make it very similar to a lower degree offense, ... a downgraded sentence may be appropriate." Megargel, 143 N.J. at 500, 673 A.2d 259 (explaining that a downgrade from first- to second-degree robbery may be justified where the defendant does not have a weapon but "simulates having a gun by placing his hand in his pocket").
The sentencing court may also consider the "characteristics or behavior of the offender[,]" but only to the extent "they relate to the offense itself and give fuller context to the offense circumstances." Lake, 408 N.J. Super. at 328, 974 A.2d 1115 ; see *122 also State v. L.V., 410 N.J. Super. 90, 112-13, 979 A.2d 821 (App. Div. 2009) (downgrading where the defendant's mental illnesses, young age, "very limited intelligence," cognitive inabilities, language and social barriers, years of having been sexually abused and threatened by her father, and having been twice impregnated by him explained why she had acquiesced to his order to throw her newborn infant out of a window). The interest of justice analysis does not include consideration of defendant's overall character or contributions to the community. Lake, 408 N.J. Super. at 328-29, 974 A.2d 1115.
"The paramount reason we focus on the severity of the crime is to assure the protection of the public and the deterrence of others. The higher the degree of the crime, the greater the public need for protection and the more need for deterrence." Megargel, 143 N.J. at 500, 673 A.2d 259. Where the crime includes an enhanced penalty, the Legislature has declared the crime especially serious, thus elevating the need for deterrence. Id. at 501-02, 673 A.2d 259 ; accord State v. Maguire, 84 N.J. 508, 514, 423 A.2d 294 (1980). "Under such circumstances, trial courts must exercise extreme caution[ ]" before ordering a downgrade. Megargel, 143 N.J. at 502, 673 A.2d 259.
In reaching its decision, the sentencing court must first find that the mitigating factors substantially preponderate. If they do, then the judge must determine whether separate compelling reasons specific to the nature of the offense compel the downgrade in the interest of justice.
*510 Jones, 197 N.J. Super. at 607, 485 A.2d 1063.
b.
At the resentencing, defendant presented evidence regarding her rehabilitative success, and the impact the crime had on her life. She divorced shortly after her release from prison, experienced difficulty with her children, whom she visited regularly, and struggled to support herself. Defendant submitted a report from her children's psychologist stating that further incarceration of *123 their mother would have "devastating effects ... [that] would be profound and long-lasting."
During the State's presentation, Seeman and his son, Ford Seeman (Ford), urged the judge to impose a sentence that fit the crimes and that did not place excessive and unwarranted weight on the alleged harm to defendant's children. We quote from Ford's statement:
A three-year sentence was imposed for the obliteration of my family's life; the same exact term given for a mere assault by auto charge against my father, as if the two crimes were interchangeable.
... My brother witnessed the tragedy, further compounding it, and watched as my mother took her last breath.
Seeman also spoke in equally moving terms of the destruction wrought on his family. He added, among other things, that the sentence did not send any message to the public that drunk drivers should be stopped.
The State requested the judge find aggravating factor one because the offense circumstances went far beyond reckless driving and causing death, the two elements of vehicular homicide. N.J.S.A. 2C:44-1(a)(1) ; N.J.S.A. 2C:11-5(a) ("Criminal homicide constitutes reckless vehicular homicide when it is caused by driving a vehicle ... recklessly."). We conclude the judge abused his discretion in failing to find that factor.
Immediately before she killed Helene and injured Seeman, defendant rear-ended another motorist. That person realized defendant was drunk and attempted to stop her from driving. Defendant left the scene of that accident, and before colliding with the Seemans' vehicle, passed cars in a no-pass zone, knocked over a mailbox, ran a red light, and tailgated other drivers.
Despite this additional driving behavior, which jeopardized others on the roadway, the trial judge did not find aggravating factor one, concerned that to do so would be to impermissibly "double count." We agree that a court may not double count a fact that establishes an element of the offense as a basis to support an aggravating or mitigating factor.
*124 State v. Fuentes, 217 N.J. 57, 74-75, 85 A.3d 923 (2014) ; Kromphold, 162 N.J. at 353, 744 A.2d 640 ; Yarbough, 100 N.J. at 633, 498 A.2d 1239. But a court may consider related conduct in excess of that required to commit the crime as evidence in the record supporting factor one. Fuentes, 217 N.J. at 75, 85 A.3d 923. The accident here occurred despite another motorist's best efforts, after a fender bender, to prevent defendant from continuing to drive. She continued driving in a manner that posed a threat to the public at large.
As the Court said in Lawless,
When it drafted N.J.S.A. 2C:44-1(a), the Legislature chose comprehensive language to define aggravating factor one: "[t]he nature and circumstances of the offense, and the role of the actor therein, including whether or not it was committed in an especially heinous, cruel, or depraved manner[.]"
*511 N.J.S.A. 2C:44-1(a)(1). Under this factor, the sentencing court reviews the severity of the defendant's crime, "the single most important factor in the sentencing process," assessing the degree to which defendant's conduct has threatened the safety of its direct victims and the public. [ State v. Hodge, 95 N.J. 369, 378-79, 471 A.2d 389 (1984) ]; State v. Megargel, 143 N.J. 484, 500, 673 A.2d 259 (1996). "The paramount reason we focus on the severity of the crime is to assure the protection of the public and deterrence of others." Megargel, supra, 143 N.J. at 500, 673 A.2d 259. "The higher degree of the crime, the greater the public need for protection and the more need for deterrence." Ibid.
[ Lawless, 214 N.J. at 609, 70 A.3d 647 (alteration in original).]
Competent, credible evidence supported factor one.
Additionally, Seeman was initially severely injured as a result of the collision. A secondary, serious health problem caused by the accident nearly took his life months after, requiring additional hospitalizations and daily help for his routine life activities for weeks after his return home. Accordingly, it would not have been double counting to find factor two as to the vehicular assault. Factor two, also requested by the State, only requires harm greater than that necessary to satisfy the statutory elements of the crime. N.J.S.A. 2C:12-1(c)(1) states that a person "is guilty of assault by auto ... when the person drives a vehicle ... recklessly and causes [ ] serious bodily injury." The extent of the harm done to Seeman exceeded that required to satisfy the element of the statute.
*125 The State also argued at the resentence hearing that the record supported aggravating factor three, the risk of re-offense. The trial judge rejected consideration of that factor because of defendant's successful rehabilitative efforts. A court's findings on the risk of re-offense should "involve determinations that go beyond the simple finding of a criminal history and include an evaluation and judgment about the individual in light of his or her history." State v. Thomas, 188 N.J. 137, 153, 902 A.2d 1185 (2006).
In Thomas, for example, factor three was accorded weight based on the quantity of drugs the defendant had for sale when arrested, which exceeded that necessary for the degree of his conviction. Id. at 140-42, 902 A.2d 1185. It was not double-counting to include the excess to establish that factor.
In State v. Varona, 242 N.J. Super. 474, 491, 577 A.2d 524 (1990), an established businessman in the community with no prior record was arrested while in possession of a very substantial amount of drugs, properly supporting aggravating factor three, despite defendant's lack of a prior record.
The nature of the activity in Thomas and Varona established the nature of the risk that the defendants would reoffend. A defendant's claims about rehabilitation have to be weighed against the criminal history, and include, when possible, objective information in the record such as the offense circumstances.
Defendant's substantial level of intoxication when the accident occurred, like the quantity of drugs in Thomas and Varona, at a minimum, means that there is a risk that she may relapse at some point in her life despite her best efforts. And that possibility means there is a risk she will again commit an offense while intoxicated. The judge should not have summarily rejected aggravating factor three solely because of her rehabilitation.
This defendant became intoxicated in a social situation in which she could have *512 easily called a cab, asked a friend for a ride home, been driven home by her husband, or simply spent the night. She *126 made no arrangements to protect others from her state of inebriation.
In the written statement defendant delivered to the court before resentencing, she said being served the divorce complaint triggered "the closest I have ever come to completely falling apart." It is remarkable that years after the incident, in writing to the sentencing judge, defendant still did not identify the crash, which killed one person and severely injured another, and the inebriation that led to it, as the worst moment of her life. That should have been of concern to the trial judge; it was not, and he did not factor it in when calculating defendant's risk to reoffend.
The law does not support the judge's virtual rejection of aggravating factor nine. Deterrence is acknowledged to be one of the most important considerations in sentencing, for the future protection of the public. Fuentes, 217 N.J. at 78-79, 85 A.3d 923. The concept "incorporates" not only deterrence of the individual defendant, but also the public in general. Id. at 79, 85 A.3d 923.
In more typical situations, general deterrence sometimes has relatively little weight in the sentencing balance. Ibid. But this is an offense which by its very nature makes general deterrence absolutely meaningful.
It is undisputed that year after year, drunken driving needlessly takes lives, inflicts physical injuries, and causes monetary loss. Since State v. Tischio, 107 N.J. 504, 527 A.2d 388 (1987), hundreds of opinions have been written in this State, and thousands of sentences handed down, attempting to address the ongoing problem. "[T]he primary purpose behind New Jersey's drunk-driving statutes is to curb the senseless havoc and destruction caused by intoxicated drivers." Id. at 512, 527 A.2d 388. Since Tischio, courts have struggled to stop driving by individuals who are "a menace to themselves and to all others who use the roadways in this State." Id. at 519, 527 A.2d 388.
Drunken drivers include a broad cross-section of society. Individuals who would not otherwise come into contact with the *127 criminal justice system do so because of driving while intoxicated.[3] It is important for the public as a whole to see that a drunk driver will not be shielded from the sanction of lengthy imprisonment should that driver kill or injure another while intoxicated, even if she or he previously led a blameless life.
In December 1995, the Legislature amended N.J.S.A. 2C:11-5 to upgrade vehicular homicide to a second-degree crime and to impose a mandatory minimum term of imprisonment for vehicular homicide while intoxicated. L. 1995, c. 285, § 1. In 2001, it amended NERA, N.J.S.A. 2C:43-7.2(d), to include vehicular homicide in the list of offenses that carry an eighty-five percent parole bar. L. 2001, c. 129. With respect to assault by auto, the Legislature designated it a third-degree crime when a driver causes serious bodily injury while intoxicated. N.J.S.A. 2C:12-1(c)(2). In 2011, the Legislature even made driving with a license suspended under N.J.S.A. 39:4-50, a fourth-degree offense under certain circumstances, and imposed a mandatory 180-day jail sentence for the crime. See N.J.S.A. 2C:40-26. These legislative enactments speak loudly to the ongoing public interest in general deterrence.
*513 Thus, the court should have found aggravating factor nine.
c.
The February 1, 2017 judgment states the judge found mitigating factor two. N.J.S.A. 2C:44-1(b)(2) ("The defendant did not contemplate that [her] conduct would cause or threaten serious harm."). The record does not support this finding. It is unwarranted in light of the facts and inconsistent with New Jersey's strong commitment to rid our roadways of drunk drivers. See State v. Bieniek, 200 N.J. 601, 985 A.2d 1251 (2010) (affirming the sentencing court's rejection of mitigation factor two on the ground that drunk driving is intolerable and a defendant's failure to understand this will not inure to his or her benefit in the form of a finding of that factor).
*128 Every driver is aware, when sober, of the responsibility to never drive while intoxicated. That defendant voluntarily became intoxicated, knowing she would drive, means she ignored the possibility of harm her behavior would cause. The factor should not have been accorded any weight whatsoever.
The judge also found mitigating factor six, that defendant will compensate the victim. The Seeman family had a pending civil suit against defendant and the hosts of the party at which defendant became inebriated. The judge found that factor because of the anticipated resolution of the civil action. That civil settlement alone should not have been the basis for a finding of mitigating factor six.
Restitution, authorized generally by N.J.S.A. 2C:44-2, implicates the interests of the State and the judicial system. State v. DeAngelis, 329 N.J. Super. 178, 183-84, 747 A.2d 289 (App. Div. 2000). The State's interest is in the rehabilitation of the offender, and the court's interest is rehabilitation of the offender as well as compensation to the victim for the loss. See State v. Martinez, 392 N.J. Super. 307, 318-19, 920 A.2d 715 (App. Div. 2007). Although a victim may recover an amount in a civil lawsuit, that does not abrogate the separate responsibility of the defendant, where relevant, to pay restitution directly to the victim. See DeAngelis, 329 N.J. Super. at 183, 747 A.2d 289. Requiring a defendant to pay restitution to a victim not only compensates the victim, but rehabilitates the wrongdoer. Id. at 186, 747 A.2d 289. Indeed, as has been long established, rehabilitation payments have a "correctional worth," whether by requiring disgorgement or compensation for losses. In re Parole Application of Trantino, 89 N.J. 347, 358, 446 A.2d 104 (1982).
To give factor six weight when the compensation comes from insurance-both defendant's and that of another-is not consistent with the rehabilitative goals expressed in the Code. That defendant and the hosts of the social event at which she became intoxicated had coverage available was mere happenstance.
*129 In any event, monetary compensation, even to the most cynical, does not make Seeman whole for Helene's loss and his own injuries. Payments by insurance companies do not advance the rehabilitation goals found in the restitution statutes. Thus, it is not clear to us on this record that the factor should have been accorded any weight.
We also question the judge's findings regarding mitigating factors eight and nine, that defendant's conduct is unlikely to recur, and that she is unlikely to reoffend. In 2001, this defendant was granted a conditional discharge in municipal court for marijuana possession. Although far from a conviction, and occurring years before, this contact with the system went *514 unmentioned. It undermines the judge's conclusion.
Mitigating factors eight and nine are not intended to trigger predictions that lack anchors in the record. Driving and consuming alcohol are not uncommon experiences. This was not defendant's first brush with the system. The judge did not focus on the nature of the crime and defendant's past history. Her sobriety alone, no matter how laudable, is not adequate support for those mitigating factors.
The trial judge on remand, like at the first sentence proceeding, also attributed significant weight to mitigating factor eleven, which calls upon a court to consider the hardships inflicted on children from the incarceration of their parents. He concluded, based on the therapist's letter to the court, that they would suffer hardship "well beyond that encountered and suffered by everyone whose kids are subjected to parental imprisonment."
The judge's statement unwittingly minimizes the harm done to the children of all incarcerated defendants. That minimization was unsupported in the record. We are not so certain that these children's suffering and trauma, short- and long-term, is any different in nature than the suffering unfortunately inflicted upon all young children whose parents are incarcerated. The suffering of this defendant's children is better documented, but there is no *130 evidence that their experience is different in quality from that of others.
In fact, these children will continue to live with their custodial parent regardless of their mother's incarceration, and have the benefit of loving grandparents and other caretakers. These children will enjoy a relatively stable and comfortable life, financially and otherwise, even if their mother is re-incarcerated. They have strong support from defendant and others who love them, as well as therapeutic resources. We agree with the judge's conclusion that mitigating factor eleven was supported by the record, but not with the weight it was given.
d.
The first prong of the downgrade analysis requires the mitigating factors to substantially outweigh the aggravating factors. N.J.S.A. 2C:44-1(f)(2). The second prong is that the interest of justice demands a downgrade. Ibid. We fail to see where either prong was met.
Here either aggravating factors were not found or were given insufficient weight. The mitigating factors were not fully supported by the record. Thus, the mitigating factors did not substantially outweigh the aggravating. This was a second-degree crime, implicating the need for public protection and for deterrence. See Megargel, 143 N.J. at 500, 673 A.2d 259. It was a crime for which the Legislature enacted an enhanced penalty, also a factor not taken into consideration. See Maguire, 84 N.J. at 514, 423 A.2d 294. Where an enhanced penalty exists, care must be taken to closely adhere to, not ignore, the downgrade statute. Id. at 501-02, 673 A.2d 259. We fail to see on this record where the interest of justice demands a downgrade.
Accordingly, we vacate the downgrade. In light of the striking similarities between the first and second sentence, the third and hopefully final hearing must occur before a different judge. See State v. Tindell, 417 N.J. Super. 530, 547, 10 A.3d 1203 (App. Div. 2011) ("the statements made by the trial judge during the sentencing *131 hearing created an irreparable impression of bias.... We are thus compelled to remand this matter for resentencing before a different judge.").
VI.
Defendant is correct that in this case double jeopardy bars the State *515 from appealing the concurrent terms. Concurrent terms are authorized dispositions, imposed at the discretion of the court. See Acevedo, 205 N.J. at 45, 11 A.3d 858 (defining an illegal sentence); State v. Ellis, 346 N.J. Super. 583, 596, 788 A.2d 849 (App. Div.) (explaining that a challenge to a concurrent term is a challenge to the court's discretionary decision, not to the legality of the sentence), aff'd o.b., 174 N.J. 535, 536, 809 A.2d 796 (2002) ; Eigenmann, 280 N.J. Super. at 346-47, 655 A.2d 452 (holding that the State may not challenge the sentencing court's discretionary decision to sentence the defendant as a young adult offender because that decision was lawful, "no matter how misguided"). As Eigenmann explains: "once service of the sentence commenced, the lawful discretionary elements of the sentence-no matter how thoughtlessly or erroneously conceived-could not be made more burdensome." 280 N.J. Super. at 348, 655 A.2d 452. It is basically too late to correct this wrong, and wrong it was.
In addition, the issue of concurrency is also now moot. Defendant has completed service of the eighteen-month sentence on the fourth-degree crime of vehicular assault and is not on parole for that offense. See Schubert, 212 N.J. at 315, 53 A.3d 1210 (precluding correction of even an illegal sentence that has been completed). Although we consider it important to briefly explain our disagreement with the judge's application of the Yarbough guidelines, at this point it is no more than an academic exercise albeit one we believe is important.
Our colleagues in State v. Liepe, 2018 N.J. Super. Lexis 18, question the meaning of the Court's language in Carey that when a drunken driver's use of a motor vehicle results in multiple victims, "ordinarily" the sentence should be at least two consecutive *132 terms. See Carey, 168 N.J. at 429, 775 A.2d 495. In their view, the language should not raise "a presumption in favor of consecutive terms." Liepe, slip op. at 12. We respectfully disagree.
In Carey, the Court prefaced its discussion by stating that it did not adopt a per se rule requiring consecutive sentences. Carey, 168 N.J. at 419, 775 A.2d 495. A per se rule, however, is entirely different from a rebuttable presumption. The Court at some length explained the importance of careful application of the Yarbough factors in order to avoid "investing unbridled discretion in sentencing judges lead[ing] to a lack of sentencing uniformity." Id. at 422, 775 A.2d 495.
In passing, the Court noted that shortly before the accident, the Legislature had increased the severity of the crime, amending the law from a third-degree to a second-degree offense, thus making aggravating factor nine, the need to deter, more consequential as "part of a legislative plan to reduce the slaughter and mayhem that occurs on our roads at the hands of drunken drivers." Id. at 426, 775 A.2d 495.
The Court carefully reviewed the Yarbough factors, as well as carefully applied them to the circumstances in that case. This included a discussion of the effect of the crash on the victims and their families. Id. at 428, 775 A.2d 495. The Court identified the third Yarbough guideline, which focuses on the " 'facts relating to the crimes[,]' " as the most significant because it focuses on the nature and number of offenses, whether the crimes occurred at different times or places, and the number of affected victims. Id. at 423, 775 A.2d 495. This factor alone, the Court said, can justify a consecutive sentence even if all others weigh in favor of a concurrent sentence. Id. at 427-28, 775 A.2d 495. "Crimes involving multiple deaths or victims who have sustained serious bodily injuries represent especially suitable circumstances for the imposition of consecutive *516 sentences." Id. at 428, 775 A.2d 495. That consideration, of course, did not mean a trial judge must impose " 'the longest sentence possible.' " Ibid. *133 The Court concluded that "in order to facilitate sentencing under Yarbough in vehicular homicide cases, the multiple victims factor is entitled to great weight and should ordinarily result in the imposition of at least two consecutive terms when multiple deaths or serious bodily injuries have been inflicted upon multiple victims by defendant." Id. at 429-30, 775 A.2d 495.
In other words, because of the very nature of a drunken driving collision that results in multiple victims, and the analytical structure of Yarbough, which heavily weighs the circumstances of an offense, such as multiple victims, a rebuttable presumption is created. Where there are multiple victims, the starting point of the sentence calculus is consecutive sentences. Only after close examination of other circumstances or the other Yarbough factors, and a knowing decision on that basis, should a sentence be imposed on a concurrent basis. There will always be exceptions. The starting point, however, is that where a crash results in multiple victims, a judge begins from consecutive sentences and works down from there. This manner of adjusting for the inherently heavily weighted third Yarbough factor includes, for example, reducing the individual terms of years downward to take into account the real time consequences of the sentence. See id. at 430, 775 A.2d 495.
In Liepe, the virtual life sentence imposed on the sixty-one-year-old defendant, thirty-two years subject to NERA, shocked the conscience. We expect our colleagues will agree that the sentence in this case, a hair's breath away from illegal, shocks the conscience, albeit for completely different reasons.
Here, the jury found defendant guilty of a lesser-included second-degree offense, despite her .23 BAC at the point of impact. The judge then further reduced the lesser conviction from second-degree to third-degree. And when he sentenced, he imposed the least amount of time possible within the third-degree range. These steps are in no way equivalent to the careful adjustment of term length that Carey describes.
*134 This defendant, like the defendant in Carey, but unlike the defendant in Liepe, had been speeding and engaging in other risky driving maneuvers. The defendant in Carey killed two persons and severely injured two others, and received two consecutive terms for an aggregate sentence of fourteen years-which the Court left intact. Id. at 422, 775 A.2d 495. In Liepe, the defendant received three consecutive terms for killing a child and severely injuring two other persons, which sentence we vacated and remanded. Liepe, (slip op. at 21). While Liepe was under the influence of alcohol when he caused the accident, the facts tended to show that the collision was the result of brief inattentiveness, which may not have been related to impairment.
The thrust of all the opinions included in this discussion is that "[e]very case requires its own Yarbough analysis." Id. at slip op. at 17. Furthermore, when a person drives while drunk, he or she always poses a risk to many- and for that reason alone, the third Yarbough factor must always be given great weight. To get behind the wheel and drive while under the influence, in today's world, is to knowingly jeopardize many.
In this case, the concurrent sentences resulted in a free crime. Defendant went unpunished for the injuries inflicted upon Seeman, despite the fact she could have easily made alternative arrangements the night of the accident and could have easily avoided driving, was extremely intoxicated, and was engaging in risky maneuvers before the crash. That is an error we cannot correct.
*517 VII.
In the beginning of this opinion, we referred to the statements made by the victims during the State's presentation, pursuant to the Crime Victim's Bill of Rights, N.J.S.A. 52:4B-36 [n]. Their comments dovetailed the sentencing goals embodied in the Code, which in this case were not met. In Liepe, the defendant was sentenced to, in real time, life. In this case, defendant was *135 sentenced to a NERA term of three years. The lack of uniformity is striking and in derogation of the Code.
Vacated and remanded for resentencing in accord with this decision.

For the sake of clarity, with the exception of Seeman, we refer to members of the family by their first names.

Imposition of NERA's eighty-five percent parole disqualifier occurs whenever a defendant is found guilty of vehicular homicide without regard to intoxication when the incident occurred. N.J.S.A. 2C:43-7.2(d)(3). Therefore, Alleyne does not affect that mandatory aspect of the sentence.

NHTSA, Traffic Safety Facts 2016 Data, Crashstats.nhtsa.dot.gov/Api/Public/viewPublication/812450 last visited Feb. 16, 2018).