<div style="border:1px solid black">

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

</div>

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2228-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ERIC PATTERSON,

    Defendant-Appellant.

_____

Submitted October 29, 2025 – Decided June 17, 2026

Before Judges Smith and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 16-09-1175.

Jennifer N. Sellitti, Public Defender, attorney for appellant (John J. Bannan, Designated Counsel, on the brief).

Wayne Mello, Acting Hudson County Prosecutor, attorney for respondent (Patrick F. Galdieri, II, Assistant Prosecutor, on the brief).

Appellant filed a supplemental brief on appellant's behalf.

PER CURIAM

Defendant Eric Patterson appeals a February 22, 2024 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. While impaired, Patterson drove his girlfriend's car across a traffic divide and onto a sidewalk, striking and killing two high school students and injuring a third. Patterson pled guilty to two counts of vehicular homicide and one count of assault by auto. The trial court sentenced him to consecutive twelve-year terms for the vehicular homicide charges, and a consecutive five-year term of incarceration for assault by auto. Defendant contends plea counsel was ineffective for not filing a motion to suppress the results of the State's warrantless blood and urine tests. We affirm for the reasons that follow.

I.

We recite the relevant facts and procedural history from State v. Patterson (Patterson II), No. A-1875-19 (App. Div. Feb. 28, 2022) (slip op. at 3-4):

> On March 5, 2016, Patterson, age twenty-three at the time, bought and ingested phencyclidine (PCP), then drove his girlfriend's car from Jersey City towards North Bergen. While driving under the influence of PCP, he disregarded several stop signs and red lights. Patterson struck pedestrians Noel Herrera, Bryan Rodriguez, and Manuel Sanchez near Union High School when he crossed the solid double-yellow line and drove on the sidewalk. Herrera and Rodriguez died

A-2228-23

as a result of the accident and Sanchez sustained a broken leg.

After the accident, defendant was taken to the hospital emergency room, where he was interviewed by two officers, Sergeant Edward Sellick of the Hoboken Police Department and Sergeant Toni-Ann Sisk of the Hudson County Sheriff's Office. Sgt. Sellick had defendant perform a series of field sobriety tests. Defendant passed one test, the Romberg test, but demonstrated signs of impairment while performing the other tests. Sgt. Sellick made several observations of defendant, from his answers to questions about the accident to his poor performance on the sobriety tests, that caused him to conclude that defendant was under the influence of drugs. The detectives gave defendant a Miranda[1] warning, then defendant consented to providing a blood and urine sample. Sgt. Sisk, in her incident report form, testified to her efforts to obtain defendant's consent to provide the sample:

> I then asked Mr. Patterson if he would voluntarily consent to giving a sample of his blood and a sample of his urine for testing. Mr. Patterson said he would. I then went over the Consent Form For Use By [L]aw Enforcement Officers When Requesting Consent to Obtain and Test Urine and the Consent Form For Use By Law Enforcement Officers When requesting to Draw and Test Blood with Mr. Patterson. Mr. Patterson consented to giving samples of his blood and urine for

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-2228-23

testing and signed both forms. Sgt. E. Sellick served as the witness of his consent and signatures. Mr. Patterson was taken into an adjacent restroom . . . where he provided a urine sample. The container with the urine sample was secured . . . .

. . . .

. . . [A nurse] . . . drew Mr. Patterson's blood sample . . . .

After defendant pleaded guilty to the three charges, the court imposed consecutive sentences. On defendant's direct appeal, we reversed and remanded to the trial court for findings with respect to the imposition of consecutive sentences. State v. Patterson (Patterson I), No. A-4340-17 (App. Div. Jan. 9, 2019). On remand, the trial court again imposed consecutive sentences, relying, in part, on our opinion in State v. Locane, 454 N.J. Super. 98 (App. Div. 2018). Defendant appealed again, this time contending the trial court erred by: applying a rebuttable presumption in favor of consecutive sentences; improperly conducting its aggravating and mitigating factors analysis; and misapplying Yarbough[2]. Defendant also contended that resentencing was warranted because the Legislature had recently adopted a youth mitigating factor, which defendant

_____

[2] State v. Yarbough, 100 N.J. 627 (1985).

4

argued should apply retroactively to his case. We rejected defendant's claims on this second direct appeal and affirmed.[3] Patterson II, slip op. at 15, 20, 22.

On September 30, 2022, defendant filed his PCR petition. Defendant argued trial counsel was ineffective for not moving to suppress the results of defendant's warrantless blood and urine screens, which indicated positive for PCP. On February 22, 2024, the PCR court heard argument. In a written order, the court denied the petition without an evidentiary hearing, stating in part:

> This court finds [p]etitioner's argument is without merit. There is no evidence that the [p]etitioner was so impaired as to render him incapable of knowingly and voluntarily consenting to have his blood drawn[.] Petitioner willingly signed consent forms to have his blood drawn and a urine sample obtained. His statements to Sergeant Sisk and [Sergeant] Sellick, while not entirely consistent, sufficiently demonstrate to this [c]ourt [that they] were intelligent and responsive.

> Nonetheless, . . . Sellick testified . . . that when he interviewed the [p]etitioner at the hospital on the night of the incident[,] he rambled, was incoherent at times, unable to formulate complete sentences, and laughed about the crash. Furthermore, [p]etitioner failed three of four psychophysical tests, had clinical symptoms of impairment, and signs of [PCP] ingestion . . . . Based on these findings, Sergeant Sellick opined that [p]etitioner was under the influence . . . .

---

[3]  In Patterson II, we noted that Locane's inapplicability did not affect our holding affirming the trial court. Patterson II, slip op. at 17-20.

A-2228-23

Furthermore, [p]etitioner's drug evaluation revealed PCP in both his blood and urine.

However, the [p]etitioner also was fully aware he was at the hospital, [had] sustained injuries due to a car crash, and knew that he had earlier been at his girlfriend's house and went to a liquor store. . . . Based on [p]etitioner's details of the events [of] the evening of the accident, along with his self-serving omission of details of the accident itself, this [c]ourt is clearly convinced [petitioner's] faculties were not so impaired that he could not knowingly and voluntarily consent to these samples.

The court ultimately found defendant failed to prove a prima facie case of ineffective assistance of counsel (IAC), noting that, on this record, counsel did not need to file a suppression motion to be effective. Defendant appealed.

## II.

We first recite our standard of review and our well-settled PCR jurisprudence.

### A.

We review the PCR court's interpretations of law de novo. State v. Hernandez-Peralta, 261 N.J. 231, 246 (2025) (citing State v. Harris, 181 N.J. 391, 419 (2004)). However, "[o]ur review of a PCR court's factual findings is 'necessarily deferential.'" Ibid. (quoting State v. Nash, 212 N.J. 518, 540 (2013)). When petitioning for PCR, a defendant must establish he is entitled "to

6

PCR by a preponderance of the evidence." State v. O'Donnell, 435 N.J. Super. 351, 370 (App. Div. 2014) (citing State v. Preciose, 129 N.J. 451, 459 (1992)).

B.

"To establish a prima facie case [of IAC], defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits." R. 3:22-10(b). The defendant must make more than "bald assertions," rather they "must allege facts sufficient to demonstrate counsel's alleged substandard performance." State v. Holland, 449 N.J. Super. 427, 435 (App. Div. 2017) (quoting State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999)).

"Under both the Federal and State Constitutions, criminal defendants are entitled to effective assistance of counsel." Hernandez-Peralta, 261 N.J. at 247 (citing U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10; Strickland v. Washington, 466 U.S. 668, 684-85 (1984); State v. Fritz, 105 N.J. 42, 58 (1987)). When a defendant alleges ineffective assistance of counsel, both prongs of the Strickland/Fritz test must be satisfied. Ibid. The first prong requires a defendant to "'show that counsel's performance was deficient,' which 'requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed . . . by the Sixth Amendment.'" Ibid. (quoting Strickland,

7

466 U.S. at 687; <u>Fritz</u>, 105 N.J. at 52). The second prong requires a defendant to show "counsel's 'deficient performance prejudiced the defense.'" <u>Ibid.</u> (quoting <u>Strickland</u>, 466 U.S. at 687; <u>Fritz</u>, 105 N.J. at 52). This prong requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>State v. Gideon</u>, 244 N.J. 538, 551 (2021) (quoting <u>Strickland</u>, 466 U.S. at 694).

### III.

Defendant argues on appeal that counsel was ineffective for failing to file a motion to suppress the results of his toxicology test because his consent to the blood and urine samples was not voluntary and knowing. In the alternative, defendant argues that there are genuine issues of material fact at issue which required the PCR court to hold an evidentiary hearing. We are unconvinced.

As a threshold matter, "when an ineffective assistance claim is based on the failure to file a suppression motion, the defendant must establish that the underlying claim is meritorious." <u>State v. Barclay</u>, 479 N.J. Super. 451, 459-60 (App. Div. 2024) (citing <u>State v. O'Neal</u>, 190 N.J. 601, 618-19 (2007)). We turn to our consent to search jurisprudence and apply it to this record.

Consent searches are a well-established exception to the warrant requirement.  State v. Miranda, 253 N.J. 461, 475-76 (2023).  We have long subjected consent searches under the New Jersey Constitution "'to a higher level of scrutiny' than available under the Federal Constitution."  State v, Elders, 192 N.J. 224, 240 (2007) (quoting State v. Carty, 170 N.J. 632, 639, modified, 174 N.J. 351 (2002)).  "It is well settled that a valid consent to search must be 'clear, knowing, voluntary, unequivocal, and express.'"  State v. Dolly, 255 N.J. Super. 278, 284 (App. Div. 1991) (quoting State v. Sugar, 100 N.J. 214, 234 (1985)).  Accordingly, where "the State seeks to justify a search on the basis of consent it has the burden of showing that the consent was voluntary, an essential element of which is knowledge of the right to refuse consent."  State v. Domicz, 188 N.J. 285 (2006) (emphasis added) (quoting State v. Johnson, 68 N.J. 349, 353-54 (1975)).  The voluntariness of a defendant's waiver is tested by the totality of the circumstances.  State v. K.H., 482 N.J. Super. 113, 129 (App. Div. 2025).  A confession made by a person while under the influence of drugs is not per se involuntary.  State v. Wade, 40 N.J. 27, 35 (1963).

Our review of the record leads us to affirm for the reasons clearly expressed by the PCR court in its cogent seventeen-page written statement of reasons.  The judge reviewed the extensive record and considered the "totality

of the circumstances," <u>K.H.</u>, 482 N.J. Super. at 129, finding defendant's consent was knowing and voluntary. We conclude that there was sufficient credible evidence in the record for the trial court to find that defendant's condition "did not affect his will or intellectual capacity," <u>Wade</u>, 40 N.J. at 36, to execute proper consents to draw his blood and urine samples. We conclude defendant has failed to establish the underlying ineffective assistance claim is meritorious. <u>Barclay</u>, 479 N.J. Super. at 459-60. Because defendant's consent was valid, there was no genuine issue of material fact at issue which required the PCR court to hold an evidentiary hearing. We discern no error.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2228-23